UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                        )
MICHAEL GRECCO PRODUCTIONS, INC.,       )
                                        )
             Plaintiff,                 )       CIV ACTION NO. 16-CV-096171
                                        )       (GHW)
       v.                               )
                                        )       ECF CASE
VALUEWALK, LLC, JACOB O. WOLINSKY,      )
and JOHN DOES 1-10,                     )
                                        )
             Defendants.                )
_____)

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

RAY LEGAL CONSULTING GROUP, P.C.

John H. Ray, III (#JR1177)\
Ray Legal Consulting Group, P.C.
4800 S. St. Lawrence Ave. #1N
Chicago, Illinois 60615
(617) 645-3000
(312) 940-5831 (fax)

jray@raylegalconsulting.com

*Attorneys for Defendants Valuewalk, LLC and Jacob O. Wolinsky*

Dated: June 19, 2017

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………………....1

STATEMENT OF FACTS………………………………………………………………….....1

STANDARD OF REVIEW……………………………………………………………….7

ARGUMENT……………………………………………………………………………......7

    I.    PLAINTIFF HAS FAILED TO DEMONSTRATE ANY INFRINGEMENT
          BY DEFENDANT JACOB WOLINSKY. …………………………………………...8

    II.   PLAINTIFF HAS FAILED TO DEMONSTRATE ANY
          BASIS FOR PERSONAL LIABILITY AGAINST JACOB WOLINSKY. …………9

          A. Plaintiff Has Failed to Demonstrate Contributory Liability Against
              Jacob Wolinsky. ……………………………………………………………......9

          B. Plaintiff Has Failed to Demonstrate Vicarious Liability Against Jacob
              Wolinsky. …………………………………………………………………..10

    III.  PLAINTIFF HAS FAILED TO ESTABLISH A VIOLATION OF
          17 U.S.C. § 1202, THE DIGITAL MILLENNIUM COPYRIGHT ACT…………...13

CONCLUSION……………………………………………………………………………..16

# TABLE OF AUTHORITIES

A&M Records v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001) ……………………………..10

Abbey House Media, Inc. v. Apple Inc., 66 F. Supp. 3d 413 (S.D.N.Y. Nov. 21, 2014)

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ………………………………………10

Arista Records LLC v. Doe, 604 F.3d 110 (2d Cir. 2010) …………………………………..8,9

Artists Music Inc. v. Reed Publ'g USA, Inc., 1994 U.S. Dist. LEXIS 6395
    (S.D.N.Y. May 17, 1994)…………………………………………………………..12,13

BanxCorp v. Costco Wholesale Corp., 723 F. Supp. 2d 596 (S.D.N.Y. 2010) …………………13

Berry v. Deutsche Bank Trust Co. Ams., 2008 U.S. Dist. LEXIS 91561
    (S.D.N.Y. Oct. 21, 2008) ……………………………………………………………….11,12

Blagman v. Apple Inc., 2013 U.S. Dist. LEXIS 71280
    (S.D.N.Y. May 20, 2013) …………………………………………………………………8

Broadvision Inc. v. Gen. Elec. Co., 2009 U.S. Dist. LEXIS 45862
    (S.D.N.Y. May 5, 2009) …………………………………………………………………11

Brought to Life Music, Inc. v. MCA Records, Inc., 2003 U.S. Dist. LEXIS 1967
    (S.D.N.Y. Feb. 11, 2003) ………………………………………………………………..10

Carell v. Shubert Org., Inc., 104 F. Supp. 2d 236 (S.D.N.Y. 2000) ………………………….11

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ………………………………………………...7

Frost-Tsuji Architects v. Highway Inn, Inc., 2014 U.S. Dist. LEXIS 157560
    (D. Haw. Nov. 7, 2014). ………………………………………………………………15

Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159
    (2d Cir. 1971) …………………………………………………………………………..9

Gordon v. Nextel Comms. and Mullen Advert., Inc., 345 F.3d 922
    (6th Cir. 2003) ………………………………………………………………………........15

Kelly v. Arriba Soft Corp., 77 F. Supp. 2d 1116
    (C.D. Cal. 1999) ……………………………………………………………………......15

Kelly v. L.L. Cool J., 145 F.R.D. 32 (S.D.N.Y. 1992) ………………………………………..8

Keogh v. Big Lots Corp., 2006 U.S. Dist. LEXIS 29496
 (M.D. Tenn. Apr. 27, 2006). ………………………………………………………………n/a

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) …………………..7

Matthew Bender & Co. v. West Publishing Co., 158 F.3d 693 (2d Cir. 1998) …………………10

Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913 (2005) ………………….8,9

Mayimba Music, Inc. v. Sony Corp. of Am., 2014 U.S. Dist. LEXIS 152051
 (S.D.N.Y. Aug. 19, 2014) ……………………………………………………………….11

Photographic Illustrators Corp. v. Orgill, Inc., 118 F. Supp. 3d 398 (D. Mass. 2015) ………….15

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000) ……………………………….7

Reiner v. Nishimori, 2017 U.S. Dist. LEXIS 65070 (M.D. Tenn. Apr. 28, 2017) …………..14,15

Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304 (2d Cir. 1963) ……………………..11

Stevens v. Corelogic, Inc., 194 F. Supp. 3d 1046 (S.D. Cal. July 1, 2016) ……………………..15

Softel, Inc v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955 (2d Cir. 1997) …………..10,11

Warren v. John Wiley & Sons, Inc., 952 F. Supp. 2d 610 (S.D.N.Y. 2013) ……………………11

Wolk v. Kodak Imaging Network, Inc., 840 F. Supp. 2d 724 (S.D.N.Y. Dec. 21, 2011) ………..9

## INTRODUCTION

Plaintiff Michael Grecco Productions, Inc. ("Plaintiff") has brought a small claims court case worth only $300, in hopes of proving more. He has failed. Now at the discover, Plaintiff has failed to produce evidence to support the majority of its allegations against the defendants in this action. The Court has already dismissed all the claims against Does #1-10. [D.E. No. 69, Electronic Order, at p.1, dated May 17, 2017.] Defendant Jacob Wolinsky is equally entitled to summary judgment on all counts alleged against him, including direct infringement (Count I), contributory and vicarious infringement (Count II) and violation of the Digital Millennial Copyright Act (County III). Defendant Valuewalk is entitled to summary judgment on Count III, leaving only Count I for trial.

## STATEMENT OF FACTS

Defendants submit the following statement of material facts as to which there is no genuine dispute:

1. Valuewalk, LLC ("Valuewalk") is a limited liability company, incorporated in New Jersey. (Defendants' Local Rule 56.1 Statement of Undisputed Material Facts, at ¶ 1 (hereinafter, "DSOF").)

2. Jacob O. Wolinsky ("Wolinsky") is the sole member and owner of Valuewalk, LLC, and serves as its Chief Executive Officer ("CEO"). (Id., at ¶ 2.)

3. Valuewalk owns www.valuewalk.com, which is a financial information and news website that publishes articles on topics relevant to financial investors. (Id., at ¶ 3.)

4. The content on www.valuewalk.com is almost entirely written journalistic content concerning financial information and news. (Id., at ¶ 4.)

5.      While www.valuewalk.com includes a design element, and the articles include pictures or images, Valuewalk markets and relies upon the written content and exclusively generates interest from readers, subscribers and viewers based upon the written journalistic content concerning financial information and news on the website.  (Id., at ¶ 5.)

6.      Valuewalk does not market or rely upon any infringed pictures or images as part of its marketing or business strategy.  (Id., at ¶ 6.)

7.      Valuewalk has no knowledge of any investor or other person who visits www.valuewalk.com for any infringed pictures or images.  (Id., at ¶ 7.)

8.      Infringed pictures or images to do not add any value to the services provided by www.valuewalk.com.  (Id., at ¶ 8.)

9.      Valuewalk cannot determine any income or other value or benefit generated by any alleged infringed picture or image on the website, including the alleged Gundlach image in this action.  (Id., at ¶ 9.)

10.     As the CEO, Wolinsky is responsible for the administrative and financial affairs of Valuewalk and www.valuwalk.com.  (Id., at ¶ 10.)

11.     Although Wolinsky has been nominally referred to as the "Editor in Chief," he does not regularly exercise direct supervisory responsibility over the content at Valuewalk.  (Id., at ¶ 11.)

12.     www.valuewalk.com's articles are created by independent contractor writers paid by Valuewalk for their content.  (Id., at ¶ 12.)

13.     The independent contractors have independent authority over the content they create, including any pictures or images they may upload to www.valuewalk.com.  (Id., at ¶ 13.)

14. Valuewalk identified the independent contractors who were responsible for posting the Jeffrey Gundlach Resource Page on the website, and any pictures or images associated with that page. (Id., at ¶ 14.)

15. Valuewalk provides legal and administrative services to the independent contractors, including information regarding copyrights and compliance with intellectual property law, and encourages them to consult its attorneys. (Id., at ¶ 15.)

16. Valuewalk encouraged independent contractors to find commercial use allowed or free license images that are available for public use on search engines that allow commercial use- or free license-restricted searches like Google.com. (Id., at ¶ 16.)

17. Valuewalk has never encouraged or even suggested that any independent contractor unlawfully use copyrighted images. (Id., at ¶ 17.)

18. Decisions regarding copyrights are made by Valuewalk's attorneys. (Id., at ¶ 18.)

19. Wolinsky did not maintain supervisory control or final authority over copyrighted material used by independent contractors at www.valuewalk.com. (Id., at ¶ 19.)

20. www.valuwalk.com has over 100,000 images posted on its website in connection with articles, resource pages and other content on the website. (Id., at ¶ 20.)

21. Valuewalk has received fewer than 5 copyright infringement claims regarding the over 100,000 images. (Id., at ¶ 21.)

22. Valuewalk has never been found to have infringed a copyright of any kind, by any authority in any proceeding. (Id., at ¶ 22.)

23. Wolinsky had no knowledge of the use of any image of Jeffrey Gundlach by Michael Grecco or Michael Grecco Productions, Inc. that may have been subject to any

3

copyright on the Jeffry Gundlach Resource Page ("Resource Page") on www.valuewalk.com. (Id., at ¶ 23.)

24. In 2011, Wolinsky obtained a license for the use of an image of Jeffrey Gundlach directly from his assistant, Loren Fleckenstein. (Id., at ¶ 24.)

25. Wolinsky provided the image to the independent contractors who were creating the Resource Page for use on www.valuewalk.com. (Id., at ¶ 25.)

26. Wolinsky never encouraged, counseled or in any other way suggested that any independent contractor use any other image other than the Gundlach image for which he had obtained a license directly from Mr. Gundlach. (Id., at ¶ 26.)

27. Prior to 2016, Wolinsky did not regularly review nor had any reason to review the over 100,000 images posted on www.valuewalk.com. (Id., at ¶ 27.)

28. Prior to July 12, 2016, Wolinsky did not review the photograph of Jeffrey Gundlach on the Resource Page. (Id., at ¶ 28.)

29. According to Valuewalk records, the Resource Page was first published in or about March 2012, including an image of Jeffrey Gundlach that Plaintiff alleges is subject to its copyright (the "alleged Gundlach image"). (Id., at ¶ 29.)

30. The alleged Gundlach image was never re-published, but was continuously displayed since March 2012. (Id., at ¶ 30.)

31. Wolinsky did not publish or post the alleged Gundlach image to www.valuewalk.com. (Id., at ¶ 31.)

32. The alleged Gundlach image was uploaded by a third-party independent contractor named Sydra. (Id., at ¶ 32.)

33. Wolinsky did not approve or in any way participate in publishing the alleged Gundlach image to www.valuewalk.com. (Id., at ¶ 33.)

34. Valuewalk has no knowledge of any person who removed any alleged content management information, the alleged "gutter credit" saying "Jeffrey Gundlach *Michael Grecco for Barron's*" in the Barron's article (the "alleged "CMI"), for the alleged Gundlach image. (Id., at ¶ 34.)

35. Valuewalk has no knowledge of any person who read the Barron's magazine, "The King of Bonds," article, published February 21, 2011 (the "Barron's article") or had any knowledge of any alleged CMI related to the alleged Gundlach image, prior to July 12, 2016. (Id., at ¶ 35.)

36. Wolinsky did not read the Barron's article, or have any knowledge of the alleged CMI related to the alleged Gundlach image, prior to July 12, 2016. (Id., at ¶ 36.)

37. The alleged Gundlach image has been available on many other websites on the Internet. (Id., at ¶ 37.)

38. Google.com does not publish independent CMI (that is either not present on the image or embedded in the image file, like the alleged CMI in this case) in connection with image search results. (Id., at ¶ 38.)

39. Google.com does not indicate whether a picture or image is subject to copyright or whether it has associated independent CMI. (Id., at ¶ 39.)

40. Google.com does not include independent CMI in connection with image search results. (Id., at ¶ 40.)

41. Barron's does not include CMI information in its publicly available picture archives or servers. (Id., at ¶ 41.)

42. The alleged Gundlach image and its file name are publicly accessible and downloadable at https://si.wsj.net/public/resources/images/BA-AV026_Gundla_G_20110218174010.jpg, without accessing the Barron's article or the alleged CMI contained in the article. (Id., at ¶ 42.)

43. An image from a Google.com search result, even if linked to Barron's website, does not identify CMI information. (Id., at ¶ 43.)

44. Downloading the alleged Gundlach image from either Google.com or from Barron's, does not provide any embedded or other CMI. (Id., at ¶ 44.)

45. Information concerning Jeffrey Gundlach is available on Wikipedia.com, including a reference to the Barron's article. (Id., at ¶ 45.)

46. Information concerning Jeffrey Gundlach is available on Google.com, including references to the Barron's article. (Id., at ¶ 46.)

47. The alleged CMI related to the alleged Gundlach image in the Barron's article is free standing text that is not included on the image, but is text below the image. (Id., at ¶ 47.)

48. The alleged CMI related to the alleged Gundlach image sits behind a paywall on Barron's website and is not publicly accessible. (Id., at ¶ 48.)

49. Accessing the alleged CMI requires a subscription to Barron's magazine. (Id., at ¶ 49.)

50. Valuewalk has no knowledge that any of its independent contractors had a subscription to Barron's magazine during the period 2012-2016. (Id., at ¶ 50.)

51. Wolinsky did not have a subscription to Barron's magazine during the period 2012-2016. (Id., at ¶ 51.)

## STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

While a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000), the nonmoving party, in opposing a motion for summary judgment, "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## ARGUMENT

There is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law as to defendant Wolinsky, on all counts alleged against him, including direct infringement (Count I), contributory and vicarious infringement (Count II) and violation of the Digital Millennial Copyright Act (County III). Likewise, defendant Valuewalk is entitled to summary judgment on Count III. As discussed herein, Plaintiff has failed to offer any evidence sufficient to meet its burden on those claims. Summary judgment therefore is appropriate.

## I. PLAINTIFF HAS FAILED TO DEMONSTRATE ANY INFRINGEMENT BY DEFENDANT JACOB WOLINSKY.

Under Count I of the complaint, Plaintiff has alleged that "***All Defendants***" "reproduced, displayed, distributed or otherwise copied" the alleged Gundlach image, as a basis for liability under 17 U.S.C. § 501. (Compl., at ¶¶ 49-50 and p.11.) In order to assert a claim of direct infringement under Section 501, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Arista Records LLC v. Doe, 604 F.3d 110, 117 (2d Cir. 2010). On May 17, 2017, the Court dismissed the complaint in its entirety against John Does #1-10, leaving only defendants Valuewalk and Wolinsky as named defendants under this count. [D.E. No. 69, Electronic Order, dated May 17, 2017 ("[B]ecause no John Doe Defendants have been named at this time, and because the deadline to add any new defendants has passed, the case is dismissed as to John Does # 1-10 for failure to serve defendants pursuant to Federal Rule of Civil Procedure 4(m).").]

However, "[t]he Copyright Act does not expressly render anyone liable for infringement committed by another." Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005). Indeed, in order to establish a claim of direct infringement against a defendant, Plaintiff must establish "by what acts during what time the defendant infringed the copyright." Blagman v. Apple Inc., 2013 U.S. Dist. LEXIS 71280, at *7 (S.D.N.Y. May 20, 2013) (citing Kelly v. L.L. Cool J., 145 F.R.D. 32, 35-36 (S.D.N.Y. 1992)).

In this case, Plaintiff has failed to produce evidence of any acts by which defendant Wolinksy infringed its alleged copyright. There is in fact no evidence that defendant Wolinksy engaged in any copying of the alleged Gundlach image. To the contrary, all the evidence suggest that an independent contractor uploaded an image similar to the alleged Gundlach image, without defendant Wolinsky's knowledge. (DSOF, at ¶¶ 11-14, 18-20, 23-28, 31-33.)

Count I, as to defendant Wolinsky, alleging direct infringement under 17 U.S.C. § 501, therefore, must be dismissed.

## II. PLAINTIFF HAS FAILED TO DEMONSTRATE ANY BASIS FOR PERSONAL LIABILITY AGAINST JACOB WOLINSKY.

Under Count II, Plaintiff asserts claims of "vicarious and contributory infringement" against "Wolinsky and persons presently unknown, identified as Does 1-10," which while not specified are also claims under 17 U.S.C. § 501. (Compl. at ¶¶ 60-67.) No claims of vicarious or contributory infringement were asserted against Valuewalk. (Id.) Again, since the Court dismissed the complaint in its entirety against John Does #1-10, Wolinsky is the only named defendant under this count. [D.E. No. 69.]

As to defendant Wolinksy, however, Plaintiff has failed to show that he is personally liable under any theory of contributory or vicarious liability, and therefore the remaining infringement claims against him under Count III should be dismissed.

### A. Plaintiff Has Failed to Demonstrate Contributory Liability Against Jacob Wolinsky.

To show contributory infringement, a Plaintiff must show that the defendant (1) had knowledge of the infringing activity and (2) induced, caused, or materially contributed to the infringing conduct of another. Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005); Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971). "The knowledge standard is an objective one; contributory infringement liability is imposed on persons who 'know or have reason to know' of the direct infringement." Arista Records LLC v. Doe, 604 F.3d 110, 118 (2d Cir. 2010). "An allegation that a defendant merely provided the means to accomplish an infringing activity is insufficient to establish a claim for contributory infringement." Wolk v. Kodak Imaging Network, Inc., 840 F. Supp. 2d 724, 750 (S.D.N.Y. Dec. 21, 2011) (brackets and internal quotation marks omitted). "Rather, participation

9

in the infringement must be substantial and the authorization or assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer." Brought to Life Music, Inc. v. MCA Records, Inc., 2003 U.S. Dist. LEXIS 1967 (S.D.N.Y. Feb. 11, 2003); see also Abbey House Media, Inc. v. Apple Inc., 66 F. Supp. 3d 413, 420 (S.D.N.Y. Nov. 21, 2014) ("Simply making something easier or more profitable is not sufficient when the aid provided lacks a direct connection to the infringing conduct.").

There is no evidence that Defendant Wolinsky had any involvement in the use of the alleged Gundlach image, or any knowledge of any alleged infringement. (DSOF, at ¶¶ 23, 27-28, 31-33.) To the contrary, the evidence shows that defendant Wolinksy obtained a license for the use of an image of Jeffrey Gundlach and provided that image to the independent contractors at Valuewalk to use on the Resource Page. (Id., at ¶¶ 24-26.) Further, Wolinksy never thereafter reviewed the Resource Page until after Plaintiff alleged infringement on July 12, 2016. (Id., at ¶ 28.)

There is simply no evidence that defendant Wolinsky "engage[d] in 'personal conduct that encourage[d] or assist[ed] the infringement,'" A&M Records v. Napster, Inc., 239 F.3d 1004, 1019, (9th Cir. 2001) (quoting Matthew Bender & Co. v. West Publishing Co., 158 F.3d 693, 706 (2d Cir. 1998)).

Summary judgment is therefore appropriate on contributory infringement under Count II. Similar to the direct infringement claims against defendant Wolinsky, there is a complete lack of evidence to sustain any claim of contributory infringement under 17 U.S.C. § 501.

B. <u>Plaintiff Has Failed to Demonstrate Vicarious Liability Against Jacob Wolinsky.</u>

In order to establish vicarious liability, Plaintiff must demonstrate that defendant Wolinsky had a "right and ability to supervise" the infringing activities and had "an obvious and direct financial interest in the exploitation of [the] copyrighted materials." Softel, Inc v. Dragon

Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997) (quoting Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963)).

Mere ownership of a corporate entity is insufficient to establish either vicariously liability. See, e.g., Mayimba Music, Inc. v. Sony Corp. of Am., 2014 U.S. Dist. LEXIS 152051, at *35 (S.D.N.Y. Aug. 19, 2014) ("A parent-subsidiary relationship, standing alone, is not enough to state a claim for vicarious liability against a parent for the actions of its subsidiary." (citing cases)); see also Broadvision Inc. v. Gen. Elec. Co., 2009 U.S. Dist. LEXIS 45862, at *4 (S.D.N.Y. May 5, 2009) (stating that plaintiff "must show more than just a legal relationship between the parent and the subsidiary" to "state a claim for vicarious liability against [the] parent for the actions of its subsidiary"). Mere corporate officer status is insufficient, absent some approval or participation in the infringement. See, e.g., Carell v. Shubert Org., Inc., 104 F. Supp. 2d 236, 271 (S.D.N.Y. 2000); Warren v. John Wiley & Sons, Inc., 952 F. Supp. 2d 610, 619 (S.D.N.Y. 2013) (quotations, brackets and citation omitted) ("Where a complaint lacks any description of acts that could lead to the conclusion of direct copyright infringement, or allegations of authorization or participation that would indicate vicarious liability or contributory infringement, claims sounding in those theories must be dismissed.").

First, Plaintiff has failed to show that Wolinsky had any "right and ability to supervise" the infringing activities, as all responsibility and control had been delegated directly to the independent contractors with final authority regarding copyright issues exercised by its attorneys, not Wolinsky. (DSOF, at ¶ 11-13, 18-19.) While Wolinsky could have policed the copyright activity of Valuewalk, that fact is insufficient to establish vicarious liability. Berry v. Deutsche Bank Trust Co. Ams., 2008 U.S. Dist. LEXIS 91561, *12-*13 (S.D.N.Y. Oct. 21, 2008) ("The mere fact that the [defendants] could have policed [the infringer] . . . is insufficient to impose

vicarious liability." (internal quotation marks omitted) (alternation in original) (citing Artists Music Inc. v. Reed Publ'g USA, Inc., 1994 U.S. Dist. LEXIS 6395, at *16 (S.D.N.Y. May 17, 1994)).

Second, Plaintiff has failed to show that Wolinsky had any obvious and direct financial interest in the alleged infringement. Defendants have failed to show any actual profits from the alleged infringement. (DSOF, at ¶ 9.) Defendants have failed to show any potential profits or benefit from the alleged infringement, as Plaintiff has failed to show that infringing pictures serve in any way as a draw for a financial services website, which they do not. (Id., at ¶¶ 3-8.)

While the website certainly draws a minimal benefit from commercial use, and free-license or Fair Use graphic content generally, Plaintiff has failed to show that Wolinsky or even Valuwalk benefited from infringing images.

There are over 100,000 pictures and images on www.valuewalk.com. (DSOF, at ¶ 20.) Fewer than 5 have been claimed to be infringing. (Id., at ¶ 21.) **That is less than half of a 1/00th of a percent.** Valuewalk has never been found to have infringed a copyright by any authority. (Id., at ¶ 22.) The suggestion that Valuewalk and much less Wolinsky has any "obvious and direct financial interest" in infringement is wildly speculative and unfounded. The Court in Artists Music, Inc. v. Reed Publishing (USA), Inc., 1994 U.S. Dist. LEXIS 6395 (S.D.N.Y. May 17, 1994), granted summary judgment on precisely this deficiency: "This Court does not believe that alleged infringements by four of 134 exhibitors in any way affected gate receipts at the Show. Plaintiffs offer no evidence that so much as a single attendee came to the Show for sake of the music played by four out of 134 exhibitors.". Id. at *17.

While a benefit may be insubstantial, it may not be so insubstantial as to be inconsequential and therefore speculative in establishing any "obvious and direct financial"

benefit. Much like in Artists Music, Plaintiff cannot show that a single person came to www.valuwalk.com because among the over 100,000 pictures, the website contained **1** random alleged picture taken by Michael Grecco. In fact, there is none. (DSOF, at ¶ 7.) Thus, Plaintiff has failed to show that Wolinsky in any way benefits from any alleged infringement by third-party writers, and thus cannot show vicariously liability. Artists Music, 1994 U.S. Dist. LEXIS 6395, at *17.

Summary judgment is therefore appropriate.

### III. PLAINTIFF HAS FAILED TO ESTABLISH A VIOLATION OF 17 U.S.C. § 1202, THE DIGITAL MILLENNIUM COPYRIGHT ACT

Under Count III, Plaintiff has alleged a violation of 17 U.S.C. § 1202(b). (Compl., at ¶¶ 72-73.) Section 1202(b) provides, insofar as is relevant to the allegations in this action, that "[n]o person shall, without the authority of the copyright owner or the law—(1) intentionally remove or alter any copyright management information [or] (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law," and in both cases, "knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." Id.

To establish a violation under subsection 1202(b), a plaintiff must show "(1) the existence of CMI on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." BanxCorp v. Costco Wholesale Corp., 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010) (collecting cases).

Plaintiff has failed to show that any person intentionally removed or altered any alleged content management information, however, because Plaintiff has failed to provide any evidence

that any person had any knowledge or reason to know of any alleged content management information. The content management information alleged by Plaintiff is the "gutter credit" text below the alleged Gundlach image in the Barron's article, stating "Jeffrey Gundlach *Michael Grecco for Barron's*" (hereinafter "alleged CMI"). (Compl., at ¶ 29 (emphasis in original) and Ex. 5 (Barron's Article) (independent text appearing below the Gundlach image.)

But that alleged CMI sits behind a paywall. (DSOF, at ¶ 48.) It cannot be accessed without a subscription to Barron's. (Id., at ¶ 49.) And neither defendant WolinsKy nor any person at Valuewalk had a subscription to Barron's to access the Barron's article and the alleged CMI. (Id., at ¶¶ 50-51.) Plaintiff has failed to produce any evidence to suggest otherwise.

Without evidence that any Defendant had a subscription to Barron's, Plaintiff cannot show that any person had knowledge of the alleged CMI. Even assuming that Valuewalk downloaded the alleged Gundlach image from Barron's (which Defendants dispute), the image and the file name can be downloaded directly from Google's image search results page or from Barron's image server, without ever seeing the alleged CMI or having any reason to know it exists – which you would only know if you had a subscription and accessed the image directly from the Barron's article page. (DSOF, at ¶¶ 38-52.) Plaintiff simply has no evidence on which to even base a reasonable inference that any Defendant accessed the alleged Gundlach image directly from the Barron's article page, the only place where the CMI appears.

Having failed to show such knowledge or reason to know, Plaintiff's claims under 17 U.S.C. § 1202(b) must be dismissed. Reiner v. Nishimori, 2017 U.S. Dist. LEXIS 65070, *25, Copy. L. Rep. (CCH) P31,091 (M.D. Tenn. Apr. 28, 2017) ("Summary judgment is appropriate … because it is undisputed [defendant] did not know or have reasonable grounds to know that removing Reiner's name, the name of the photograph, or the copyright tracking number, would

'induce, enable, facilitate, or conceal an infringement of the federal copyright laws.') (citing Gordon v. Nextel Comms. and Mullen Advert., Inc., 345 F.3d 922, 927 (6th Cir. 2003)).

Equally, Plaintiff has failed to show that any person "intentionally" removed any CMI, as opposed to it being inadvertently omitted as a consequence of the uploading process. See, e.g., Stevens v. Corelogic, Inc., 194 F. Supp. 3d 1046, 1052, 2016 U.S. Dist. LEXIS 86843, *14 (S.D. Cal. July 1, 2016); see also Frost-Tsuji Architects v. Highway Inn, Inc., 2014 U.S. Dist. LEXIS 157560, *13 (D. Haw. Nov. 7, 2014).

Summary judgment is appropriate here. See Kelly v. Arriba Soft Corp., 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999) (subsequent history omitted) (evidence established that "Defendant did not have 'reasonable grounds to know' it would cause its users to infringe Plaintiff's copyright"" when Defendant used software that automatically indexed online images, including those from Plaintiff's website, removing CMI in the process); Gordon v. Nextel Commc'ns & Mullen Advert., Inc., 345 F.3d 922, 926 (6th Cir. 2003) (the plaintiff failed to contradict the defendants' affidavits that had no knowledge that CMI was removed from the poster at issue); Photographic Illustrators Corp. v. Orgill, Inc., 118 F. Supp. 3d 398 (D. Mass. 2015) (no evidence indicated that defendants "ever received any images containing copyright attribution information or any marks indicating [the plaintiff's] proprietary interest in the first place."); Frost-Tsuji Architects v. Highway Inn, Inc., No. CIV. 13-00496 SOM, 2014 U.S. Dist. LEXIS 157560, 2014 WL 5798282, at *5 (D. Haw. Nov. 7, 2014) (subsequent history omitted) (plaintiff presented no evidence showing that the defendants removed CMI).

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that the Court grant their motion for partial summary judgment, and grant such other and further relief as the Court deems just and appropriate under the circumstances.

Dated: New York, New York
       June 19, 2017

Respectfully submitted,

RAY LEGAL CONSULTING GROUP, P.C.

By: /s/ John H. Ray, III
John H. Ray, III (#JR1177)

Ray Legal Consulting Group, P.C.
4800 S. St. Lawrence Ave. #1N
Chicago, Illinois 60615
(617) 645-3000
(312) 940-5831 (fax)

jray@raylegalconsulting.com

*Attorneys for Defendants Valuewalk, LLC and Jacob O. Wolinsky*