**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

MICHAEL GRECCO PRODUCTIONS, INC.,

              Plaintiff,

        v.

VALUEWALK, LLC, JACOB O. WOLINSKY,
and JOHN DOES 1-10,

              Defendants.
_____

CIV ACTION NO. 16-CV-096171
(GHW)

ECF CASE

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

RAY LEGAL CONSULTING GROUP, P.C.

John H. Ray, III (#JR1177)
Ray Legal Consulting Group, P.C.
10044 South Leavitt Street
Chicago, Illinois 60643
(617) 645-3000
(312) 940-5831 (fax)

jray@raylegalconsulting.com

*Attorneys for Defendants Valuewalk, LLC and
Jacob O. Wolinsky*

Dated: July 24, 2017

## ORAL ARGUMENT REQUESTED

## <u>TABLE OF CONTENTS</u>

INTRODUCTION…………………………………………………………………………...1

STATEMENT OF FACTS……………………………………………………………………..1

STANDARD OF REVIEW……………………………………………………………………1

ARGUMENT…………………………………………………………………………………...1

I.      PLAINTIFF HAS FAILED TO DEMONSTRATE THAT VALUEWALK
INFRINGED ANY ALLEGED COPYRIGHT OWNED BY PLAINTIFF………......2

        A.    PLAINTIFF HAS FAILED TO DEMONSTRATE THAT UNITED
STATES LAW APPLIES TO THE ALLEGED INFRINGEMENT IN
THIS ACTION, RATHER THAN PAKISTANI LAW..………………….....3

        B.    PLAINTIFF HAS FAILED TO DEMONSTRATE NO GENUINE ISSUE
OF MATERIAL FACT THAT DEFENDANT VALUEWALK COPIED
ITS ALLEGED WORK IN AN UNLAWFUL MANNER OR
ENTITLEMENT TO JUDGMENT AS A MATTER OF LAW……………..4

                1.    Plaintiff Has Failed To Demonstrate No Genuine Issue Of Material
Fact As To The Defense Of Fair Use And Entitlement To Judgment
As A Matter Of Law……………………………………………………..6

                2.    Valuewalk's Use of The Alleged Gundlach Image is Substantially
Transformative Fair Use……………………………………………7

                2.    The Alleged Gundlach Image Is Stock Photography, Used as
Commercial Filler, Ranking Far Down on the Scale of Creative
Works that Generally are Less Susceptible to Fair Use……………...10

                4.    Valuewalk's Use of The Alleged Gundlach Image Was Minimal to
Serve the Purpose of the Fair Use…………………………………11

                5.    There is No Market For The Alleged Gundlach Image……………...12

        C.    PLAINTIFF HAS FAILED TO DEMONSTRATE NO GENUINE
ISSUE OF MATERIAL FACT AS TO THE WHEN PLAINTIFF,
BY REASONABLE DILIGENCE, SHOULD OF HAVE KNOWN OF
ANY ALLEGED INFRINGEMENT OR ENTITLEMENT OF JUDGMENT
AS A MATTER LAW…………………………………………………………13

D.    PLAINTIFF HAS FAILED TO DEMONSTRATE NO GENUINE
ISSUE OF MATERIAL FACT AS TO THE DEFENSE OF COPYRIGHT
MISUSE OR ENTITLEMENT TO JUDGMENT AS A MATTER
OF LAW…………………………………………………………………..14

II.    PLAINTIFF HAS NOT SHOWN AND AS A MATTER OF LAW CANNOT
SHOW THAT JACOB WOLINSKY IS VICARIOUSLY LIABLE FOR
INFRINGING ANY ALLEGED COPYRIGHT OWNED BY PLAINTIFF ……….18

CONCLUSION……………………………………………………………………..22

# TABLE OF AUTHORITIES

## CASES

AF Holdings, LLC v. Olivas, No. 12-CV-01401, 2013 U.S. Dist. LEXIS 115932
(D. Conn. Aug. 16, 2013)…. …………………………………………….......17

Alden-Rochelle, Inc. v. American Soc. of Composers, Authors & Publishers, 80 F. Supp.
888 (S.D.N.Y. 1948)……………………………………………………………..18

Am. Geophysical Union v. Texaco Inc., 60 F.3d 913 (2d Cir. 1994)……………………………13

Arista Records LLC v. Doe, 604 F.3d 110 (2d Cir. 2010) ……………………………………2, 4

Artists Music Inc. v. Reed Publ'g USA, Inc., No. 93-CV-3428, 1994 U.S. Dist.
LEXIS 6395 (S.D.N.Y. May 17, 1994)……………………………………………...19, 21

Assessment Techs. of WI, LLC v. WIREdata, Inc., 350 F.3d 640 (7th Cir. 2003)……...16, 17, 18

Berry v. Deutsche Bank Trust Co. Ams., No. 07-CV-7634, 2008 U.S. Dist. LEXIS 91561
(S.D.N.Y. Oct. 21, 2008) …………………………………………………………..19

Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605 (2d Cir. 2006)…………...passim

Blagman v. Apple Inc., No. 12-CV-5453, 2013 U.S. Dist. LEXIS 71280
(S.D.N.Y. May 20, 2013) ……………………………………………………………2

Blanch v. Koons, 467 F.3d 244 (2d Cir. 2006)……………………………………………6, 7

Bourne v. Walt Disney Co., No. 02-CV-6400, 2003 U.S. Dist. LEXIS 2818
(S.D.N.Y. Mar. 3, 2003)…………………………………………………………18

Broadcast Music, Inc. v. Hearst/ABC Viacom Entertainment Services, 746 F. Supp. 320
(S.D.N.Y. 1990)……………………………………………………………………15

Broadvision Inc. v. Gen. Elec. Co., No. 08-CV-1478, 2009 U.S. Dist. LEXIS 45862
(S.D.N.Y. May 5, 2009) …………………………………………………………20

BWP Media USA, Inc. v. Gossip Cop Media, Inc., 196 F. Supp. 3d 395
(S.D.N.Y. 2016) ……………………………………………………………..10, 11

Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569 (1994)……………………………6, 7, 10, 11

Carell v. Shubert Org., Inc., 104 F. Supp. 2d 236 (S.D.N.Y. 2000) ……………………………20

Cariou v. Prince, 714 F.3d 694 (2d Cir. 2013)……………………………………………6, 7

Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc., 150 F.3d 132 (2d Cir. 1998)……………….7

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ……………………………………………………...1

Coach, Inc. v. Kmart Corps., 756 F. Supp. 2d 421, 428-429 (S.D.N.Y. 2010)…………………15

Coleman v. ESPN, Inc., 764 F. Supp. 290 (S.D.N.Y. 1991)……………………………………15

Computer Associates Int'l, Inc. v. Altai, Inc., 982 F.2d 693 (2d Cir. 1992)……………………..4

Craft v. Kobler, 667 F. Supp. 120 (S.D.N.Y. 1987)……………………………………………9

Graham v. Prince, 15-Cv-10160, No. 2017 U.S. Dist. LEXIS 111521
(S.D.N.Y. Jul. 18, 2017)……………………………… …………………………………6

Energy Intelligence Group, Inc. v. Scotia Capital (USA) Inc., No. 16-CV-00617,
2017 U.S. Dist. LEXIS 13102 (S.D.N.Y. Jan. 30, 2017) ………………………………13

Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539 (1985) ………………………12

Hofheinz v. A & E Television Networks, Inc., 146 F. Supp. 2d 442 (S.D.N.Y. 2001)…………..9

Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82 (2d Cir. 1998)…………..3

Jamison Bus. Sys. v. Unique Software Support Corp., No. 02-CV-4887, 2005 U.S.
Dist. LEXIS 45480 (E.D.N.Y. May 26, 2005). …………………………………………..4

John Wiley & Sons, Inc. v. Book Dog Books, LLC, No. 13-CV-0816, 2016 U.S. Dist.
LEXIS 127307 (S.D.N.Y. Sep. 19, 2016) …………………………………………………15

Kelly v. Arriba Soft Corp., 336 F.3d 811 (9th Cir. 2003) …………………………………8, 11

Kelly v. L.L. Cool J., 145 F.R.D. 32 (S.D.N.Y. 1992) ………………………………………...2

Lasercomb Am., Inc. v. Reynolds, 911 F.2d 970 (4th Cir. 1990) ………………………........15

Lauritzen v. Larsen, 345 U.S. 571(1953) …………………………………………………3

Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913 (2005) …………………2

Mayimba Music, Inc. v. Sony Corp. of Am., No. 12-CV-1094, 2014 U.S. Dist.
LEXIS 152051 (S.D.N.Y. Aug. 19, 2014) …………………………………….......20

Nunez v. Caribbean Int'l News Corp., 235 F.3d 18 (1st Cir. 2000) ……………………...11

iv

O.P Solutions, Inc. v. Intellectual Property Network, Ltd., No. 96-CV-7952, 1999 U.S.
Dist. LEXIS 979 (S.D.N.Y. Feb. 2, 1999) …………………………………………….5, 6

Practice Mgmt. Info. Corp. v. Am. Medical Assoc, 121 F.3d 516 (9th Cir. 1997) …………..15

Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120 (2d Cir. 2014) …………………………13

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000) ………………………………1

Rundquist v. Vapiano SE, 798 F. Supp.2d 102 (D.D.C. 2011)………………………………...3

Saks Inc. v. Attachmate Corp., No. 14-CV-4902, 2015 U.S. Dist. LEXIS 52867
(S.D.N.Y. Apr. 17, 2015)……………………………………………………………..15

UMG Recordings, Inc. v. Lindor, 531 F. Supp. 2d 453 (E.D.N.Y. 2007) ………………………18

Walker v. Time Life Films, Inc., 784 F.2d 44 (2d Cir. 1986) …………………………………4

Warren v. John Wiley & Sons, Inc., 952 F. Supp. 2d 610 (S.D.N.Y. 2013) ……………………20

## STATUTES

17 U.S.C. § 107……………………………………………..…………………………………..6

17 U.S.C. § 501……………………………………………..………………………….passim

17 U.S.C. § 507……………………………………………..…………………………………13

Pakistan, The Copyright Ordinance, 1962 (Act No. XXXIV)………………………………..3, 4

## PUBLICATIONS

Pierre N. Leval, Toward a Fair Use Standard, 103 Harv. L. Rev. 1105 (1990)…………………10

## INTRODUCTION

Plaintiff Michael Grecco Productions, Inc.'s reach exceeds its grasp.  It has set out lofty claims against defendants Valuewalk, Inc. and Jacob O. Wolinsky, with little to no support in the record, much like its claims against the John Doe 1-10 defendants, who have already been dismissed.  Plaintiff simply cannot show that there are no genuine issues of material fact for trial or that it is entitlement to judgment as a matter of law.  Summary judgment should be denied.

## STATEMENT OF FACTS

The facts are set forth in Defendants' Response to Plaintiff's Statement of Undisputed Facts, which are referenced and incorporated as if stated fully herein.

## STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

## ARGUMENT

At every turn, Plaintiff has failed to show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  To be sure, Plaintiff did not even apply the correct law.  Pakistani law applies, not U.S. law, which Plaintiff has completely overlooked in its motion.  The facts are beyond dispute that all of the alleged infringement

occurred in Pakistan.  (Defs.' L.R. 56.1 Counterstatement of M. Facts, at ¶¶ 72, 92-97 (hereinafter "DCSOF").)  This choice of law oversight is fatal to the motion.  Indeed, it is fatal to most of the relief upon which Plaintiff heavily relies, including statutory damages, attorneys' fees and a presumption of disgorgement starting with gross revenue, under 17 U.S. Code § 504, which are absent under Pakistani law.

For purposes of this response, however, Defendants address U.S. law to further illustrate the deficiencies in Plaintiff's case (without waiver of applicable Pakistani law).

## I.  PLAINTIFF HAS FAILED TO DEMONSTRATE THAT VALUEWALK INFRINGED ANY ALLEGED COPYRIGHT OWNED BY PLAINTIFF.

Under Count I of the complaint, Plaintiff has alleged that "*All Defendants*" "reproduced, displayed, distributed or otherwise copied" the alleged Gundlach Image, as a basis for liability under 17 U.S.C. § 501.  (Compl., at ¶¶ 49-50 and p.11.)  In order to assert a claim of direct infringement under Section 501, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Arista Records LLC v. Doe, 604 F.3d 110, 117 (2d Cir. 2010).  However, "[t]he Copyright Act does not expressly render anyone liable for infringement committed by another."  Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005).  Indeed, in order to establish a claim of direct infringement against a defendant, Plaintiff must establish "by what acts during what time the defendant infringed the copyright."  Blagman v. Apple Inc., No. 12-CV-5453, 2013 U.S. Dist. LEXIS 71280, at *7 (S.D.N.Y. May 20, 2013) (citing Kelly v. L.L. Cool J., 145 F.R.D. 32, 35-36 (S.D.N.Y. 1992)).

In this case, Plaintiff has failed to establish the absence of any genuine issue of material fact as to the alleged infringement.  All of the facts are in dispute, and materially so, precluding summary judgment, beyond the issue of Plaintiff's failure to address Pakistani law.

**A.  PLAINTIFF HAS FAILED TO DEMONSTRATE THAT UNITED STATES LAW APPLIES TO THE ALLEGED INFRINGEMENT IN THIS ACTION, RATHER THAN PAKISTANI LAW.**

In the first instance, as Defendants indicated above, Pakistani law applies to the alleged copyright infringement (though not ownership) in this case, not U.S. law.  Discovery has repeatedly put Plaintiff on notice that the lex loci delicti was in Pakistan, and yet, Plaintiff has persisted in in the unfounded assumption that U.S. law applies in their motion.  The alleged infringement occurred in Pakistan, not the United States.  (PCSOF, at ¶¶ 72, 92-97.)  The purported image was searched and retrieved in Pakistan.  (Id., at ¶ 94.).  It was downloaded in Pakistan.  (Id., at ¶ 95.)  It was uploaded in Pakistan.  (Id., at ¶ 96.)  The individual who engaged in all of the conduct associated with the alleged infringed image resides in Pakistan.  (Id., at ¶ 92.)  She has no connection to the United States.  (Id., at ¶ 97.)  Indeed, every single element of the alleged "copying" occurred in Pakistan.  (Id., at ¶¶ 72, 92-97.)

The law is clear that Pakistani law therefore applies.  "On infringement issues, the governing conflicts principle is usually lex loci delicti, the doctrine generally applicable to torts." Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82, 91 (2d Cir. 1998) (citing Lauritzen v. Larsen, 345 U.S. 571, 583 (1953) ("The solution most commonly accepted as to torts in our municipal and in international law is to apply the law of the place where the acts giving rise to the liability occurred, the lex loci delicti commissi."))  Here, that is Pakistan. Pakistan is a member of the Berne Convention.  Rundquist v. Vapiano SE, 798 F. Supp.2d 102, 131 n.16 (D.D.C. 2011) (citing Contracting Parties, Berne Convention, WIPO, available at http://www.wipo.int/treaties/en/ShowResults.jsp? lang=en&treaty_id=15 (last visited July 23, 2017) (indicating that Pakistan is a signatory to the Berne Convention).  And Pakistani law sufficiently protects against infringement, albeit without the statutory damages and attorneys' fees provided by U.S. law (difference which makes choice of law controlling).  See Pakistan,

The Copyright Ordinance, 1962 (Act No. XXXIV) <u>available at</u>

<u>http://www.wipo.int/wipolex/en/text.jsp?file_id=129350#LinkTarget_482</u> (last visited July 23,

2017).

Because Plaintiff's motion for summary judgment is incorrectly based upon U.S. law, it

is should be denied.  Plaintiff has not even attempted to show that it is entitled to summary

judgment under Pakistani law.

> **B.     PLAINTIFF HAS FAILED TO DEMONSTRATE NO GENUINE ISSUE OF MATERIAL FACT THAT DEFENDANT VALUEWALK COPIED ITS ALLEGED WORK IN AN UNLAWFUL MANNER OR ENTITLEMENT TO JUDGMENT AS A MATTER OF LAW.**

Under Count I of the complaint, Plaintiff has alleged that "***All Defendants***" "reproduced,

displayed, distributed or otherwise copied" the alleged Gundlach image, as a basis for liability

under 17 U.S.C. § 501.  (Compl., at ¶¶ 49-50 and p.11.)  As demonstrated above, Pakistani law

applies, which Defendants have failed to address.  But even if U.S. law applied, Plaintiff has still

failed to demonstrate that no genuine issue of material fact exits and entitlement to judgment as a

matter of law.  In order to assert a claim of direct infringement under Section 501, "two elements

must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of

the work that are original."  <u>Arista Records LLC v. Doe</u>, 604 F.3d 110, 117 (2d Cir. 2010).  The

plaintiff can do this either by direct evidence, or by showing that, "(1) the defendant had access

to the plaintiff's copyrighted work and (2) that defendant's work is substantially similar to the

plaintiff's copyrightable material."  <u>Jamison Bus. Sys. v. Unique Software Support Corp.</u>, No.

02-CV-4887, 2005 U.S. Dist. LEXIS 45480, at *24 (E.D.N.Y. May 26, 2005) (<u>citing</u> <u>Computer</u>

<u>Associates Int'l, Inc. v. Altai, Inc.</u>, 982 F.2d 693, 701 (2d Cir. 1992) (<u>citing</u> <u>Walker v. Time Life</u>

<u>Films, Inc.</u>, 784 F.2d 44, 48 (2d Cir. 1986))).  For purposes of this motion for partial summary

judgment, Defendants do not dispute that Plaintiff had a validly registered copyright in the Gundlach Image at issue in this action.

As to copying, however, <u>first</u>, Plaintiff has no direct evidence of infringement.  There is substantial evidence that Plaintiff's claim that Valuewalk "copied the Gundlach Image in exactly the form that Barron's used," is false.  (Defs.' Resp. to Pl.'s L.R. 56.1 Stat. of M. Facts, Resp. No. 14 (hereinafter, "Defs.' Resp.").)  The two disputed images are not "exactly" the same, but are substantially different:

> The Barron's image is a 553 × 369 pixel 40KB image, with a glossy professional finish. (<u>See</u> PSOF, Ex. 4; Barron's Server File of the Gundlach Image, <u>available at</u> <u>http://si.wsj.net/public/resources/images/BA-AV026_Gundla_G_20110218174010.jpg</u>) (meta data contained in the stored image) (last visited July 23, 2017).  The Valuwalk image is a 300 x 200 pixel image, that appears altered, to create a substantially rendered new creation with a flat filtered effect, similar to Photoshop Rough Pastels, Dry Brush, Paint Daubs or Underpainting, providing a different texture and contrast to the image. (<u>See</u> PSOF, Ex. 16; <u>see also</u> Ex. 17, Server File Description: <u>http://cdn1.valuewalk.com/wp-content/uploads/2012/03/ BA-</u> <u>AV026_Gundla_G_201102181740101-300x200.jpg</u>)).  It lacks the alleged qualities that Michael Grecco testified makes his image unique and different from any of the hundreds of free images of Jeffrey Gundlach.  (<u>See</u> PSOF, Ex. 16; <u>see also infra</u>, DCSOF, ¶ 127 (and the evidence cited therein).).  In addition, the text framed with the image ("THE NEW BOND KING" and "THE BEST BOND MANAGER IN THE WORLD"), create a different impression and artistic representation, similar to a meme creation.  (PSOF, Ex. 16, at p.1.) Valuewalk also added substantial text, references, biographical information and commentary to the work.  (PSOF, Ex. 16; <u>see also infra</u>, DCSOF, at ¶ 98 (and the evidence cited therein).)

<u>Second</u>, while Plaintiff has admitted that the images are similar, and therefore that a reasonable jury <u>may</u> at trial conclude copying, that is far from the "only … conclusion".  (Pl.'s Br. at p.5.) A jury could reasonably conclude that Valuewalk did not copy the image, but created a similar looking image in Photoshop that is not the same.

Moreover, "[i]t is not enough for the plaintiff to establish that the defendant copied all or some of the work in question; the plaintiff must also establish that the copying in question is unlawful." <u>O.P Solutions, Inc. v. Intellectual Property Network, Ltd.</u>, No. 96-CV-7952, 1999

U.S. Dist. LEXIS 979, at *13 (S.D.N.Y. Feb. 2, 1999).  As demonstrated below, any alleged use was not unlawful, but fair use.

      **1.**           **Plaintiff Has Failed To Demonstrate No Genuine Issue Of Material Fact As To The Defense Of Fair Use And Entitlement To Judgment As A Matter Of Law.**

As an affirmative defense to any alleged infringement, Defendants have alleged fair use under its Fourth Affirmative Defense.  (Ans., at p.8.)

The doctrine of "fair use" is an important limitation on the original creator's monopoly rights.  See, e.g., Graham v. Prince, 15-CV-10160, No. 2017 U.S. Dist. LEXIS 111521, at *13 (S.D.N.Y. Jul. 18, 2017).  It provides that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching … scholarship, or research, is not an infringement of copyright."  17 U.S.C. § 107.  It is a complete bar to liability for copyright infringement.  The determination of fair use is a "mixed question of fact and law," which necessitates "an open-ended and context-sensitive inquiry."  Cariou v. Prince, 714 F.3d 694, 704-05 (2d Cir. 2013) (citations omitted).  Courts conduct this inquiry by considering four non-exclusive factors:

      (1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;"

      (2) "the nature of the copyrighted work;"

      (3) "the amount and substantiality of the portion used in relation to the copyrighted work as a whole;" and

      (4) "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.  The factors must be "weighed together, in light of the purposes of copyright." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 578 (1994).  The first factor, and in particular "transformativeness," is at "[t]he heart of the fair use inquiry."  Blanch v. Koons, 467 F.3d 244, 251 (2d Cir. 2006) (citation omitted).  If the allegedly offending use of the original

work is "transformative" — that is, if it "alter[s] the first [work] with new expression, meaning, or message," Campbell, 510 U.S. at 579 — it is likely to be "the very type of activity that the fair use doctrine intends to protect for the enrichment of society." Cariou, 714 F.3d at 706 (quoting Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc., 150 F.3d 132, 142 (2d Cir. 1998)).

2.   **Valuewalk's Use of The Alleged Gundlach Image is Substantially Transformative Fair Use.**

As to the character and use of the image, Valuewalk used the alleged Gundlach image in a resource page (which was part of a large collection of over 100 pages on various financial luminaries), which served as a compendium of biographical works, discussing the background and achievements of a notable public figures, in this case, Jeffrey Gundlach.  (See Pl.'s L.R. 56.1 Stat. of M. Facts, Ex. 16 (hereinafter "PSOF")); see also DCSOF, at ¶¶ 98-102.)  The resource pages (plural) were not simply single page reproductions of alleged images.  They used images integrated into an overall series of biographical works that added significant and transformative elements in the arrangement of the alleged images, and in this case in particular, the use of declarative statements about Jeffrey Gundlach in connection with the images, as well as volumes of text providing, facts, references, biographical information and commentary.  (Defs.' Resp. No. 14; DCSCOF, at ¶ 98.)  This Circuit has definitively recognized this kind of collective biographical use as transformative.  See, e.g., Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 611 (2d Cir. 2006).

As to the Gundlach Resource Page in particular, the alleged image illustrates the large presence that Jeffrey Gundlach has become.  The text supports this impression, with statements around the image: "THE NEW BOND KING" and "THE BEST BOND MANAGER IN THE WORLD".  (PSOF, Ex. 16, at p.1.)  Valuewalk substantially transformed the use of the alleged image in its collection of biographical pages.  As to the Jeffrey Gundlach image, Valuewalk

changed the size, character and placement of the alleged image, and added substantial text, historical information and data, to create an overall historical biography among a series in its resource pages.  (DCSOF, at ¶¶ 98-101.)  The Barron's image of Jeffrey Gundlach is a 553 × 369 pixel 40KB image, with a glossy professional finish.  (Defs.' Resp. No. 14.)  image is a 300 x 200 pixel image, that appears altered, to create a substantially rendered new creation with a flat filtered effect, similar to Photoshop Rough Pastels, Dry Brush, Paint Daubs or Underpainting, providing a different texture and contrast to the image.  (Id.)  It lacks all of the qualities that Michael Grecco testified makes his image unique and different from any of the thousands of free images of Jeffrey Gundlach.  ((Id.; DCSOF, at ¶ 127).  In addition, the text framed with the image ("THE NEW BOND KING" and "THE BEST BOND MANAGER IN THE WORLD") create a different impression and artistic representation, similar to a meme creation.  (Defs.' Resp. No. 14.)  Valuewalk also added substantial text, references, biographical information and commentary to the work.  (DCSOF, at ¶ 98; see also PSOF, Ex. 16.)

These changes are significant.  The Second Circuit has expressly held transformative, first, a biography, as here (Defs.' Res. No. 14), that "significantly reduced the size of the reproductions."  Bill Graham Archives, 448 F.3d at 611 (citing Kelly v. Arriba Soft Corp., 336 F.3d 811, 818-20 (9th Cir. 2003) (finding online search engine's use of thumbnail-sized images to be highly transformative)).  Here, Valuewalk not only changed the size, but made a dramatically and more prominently larger-than-life placement of the alleged image, adding to the grand title given: "THE BEST BOND MANAGER IN THE WORLD."  (PSOF, Ex. 16, at p.1.)  The Second Circuit has expressly held transformative, second, a biography that, as here (DCSOF, at ¶ 98), "minimized the expressive value of the [alleged] reproduced image[ ] by combining [it] with … textual material, and original graphical artwork, to create a collage of text

and image[ ].”  Bill Graham Archives, 448 F.3d at 611 (finding that the use “enrich[ed] the

presentation of the cultural history of the Grateful Dead, not [exploited] copyrighted artwork for

commercial gain” (citing Hofheinz v. A & E Television Networks, Inc., 146 F. Supp. 2d 442,

446-47 (S.D.N.Y. 2001)).  The Second Circuit has expressly held transformative, third, a

biography where, as here (DCSOF, at ¶ 99), “images constitute an inconsequential portion of”

the work.  Bill Graham Archives, 448 F.3d at 611 (“The extent to which unlicensed material is

used in the challenged work can be a factor in determining whether a biographer’s use of original

materials has been sufficiently transformative to constitute fair use.”  (citing Craft v. Kobler, 667

F. Supp. 120, 129 (S.D.N.Y. 1987).)

While Bill Graham Archives involved a book, this case no differently involves over 100

resources pages that are a larger biographical work of prominent investors, beyond merely

Jeffrey Gundlach.  (DCSOF, at ¶¶ 100-01.)  Indeed, Valuewalk created resource pages for

Warren Buffet, Aswath Demodaran, Ray Dalio, Jim Chanos, Bill Hwang, Michael Mauboussin,

Chris Shumway, Max Heine, Wally Weitz, Michael Larson, Lee Ainslie, Manish Chopra, Patrick

McCormack, Andreas Halvorsen, Chase Coleman, Stephen Mandel, John Griffin, Alfred

Winslow Jones, Rick Guerin, Stan Perlmeter, Kenneth French, Eugene Farma, Robert Shiller,

John Bogle, Tom Knapp, Ed Anderson, Shelby Davis, Henry Singleton, Phil Carret, Charles

Royce, Michael Price, Joel Greenblatt, Tom Russo, David Herro, John Paulson, David Tepper,

Charles Brandes, Francis Chou, Bill Ackman, Edward Lampers, George Soros, Howard Marks,

Carl Icahn, Nelson Peltz, Dan Loeb, Donald Yacktman, Walter Schloss, Alan Howard, Marty

Whitman, Glenn Greenberg, Bruce Greenwald, Robert Rodriguez, Mason Hawkins, Tom

Gayner, Kerr Neilson, Dr. Lee Shau Kee, Albert Frere, Jesse Livermore, Bill Gross, Prince

Alwaleed Bin Talal Alsaud, Jeffrey Gundlach, Chandrakant Sampat, Irving Kahn, Jean-Marie

Eveilard, Mario Gabelli, Julian Robertson, Jr., Francisco Garcia Parames, Kyle Bass, Charlie

Munger, Michael Steinhardt, Michael Burry, Chris Browne, Philip Fisher, Peter Cundill, Bill

Ruane, T. Rowe Price, Peter Lynch, Prem Watsa, David Einhorn, James Montier, Paul Sonkin,

Whitney Tilson, Mohnish Pabrai, Seth Klarman, John Neff, Benjamin Graham, John Templeton,

David Dreman, and Bruce Berkowitz.  (Id., at ¶ 101.)

   There is no substantive difference.  Indeed, in Bill Graham Archives, an aggrieved

copyright holder could have taken one page, and claimed that the Court should only pay attention

to the one page where his work appeared, and pretend the use was not part of a larger work.  The

Second Circuit rejected this narrow view in Bill Graham Archives, as this Court should here.

There is no question that the use here, the compendium of resource pages, not just the single use

of the alleged Gundlach Image was transformative, regardless whether Valuewalk admits or has

knowledge of the source – it is the use that matters.  BWP Media USA, Inc. v. Gossip Cop

Media, Inc., 196 F. Supp. 3d 395, 406 (S.D.N.Y. 2016), cited by Plaintiff, says nothing about an

"admission requirement."

### 3. The Alleged Gundlach Image Is Stock Photography, Used as Commercial Filler, Ranking Far Down on the Scale of Creative Works that Generally are Less Susceptible to Fair Use.

Under the second factor, the "court considers 'the protection of the reasonable

expectations of one who engages in the kinds of creation/authorship that the copyright seeks to

encourage.'"  Bill Graham Archives, 448 F.3d at 612 (citing Pierre N. Leval, Toward a Fair Use

Standard, 103 Harv. L. Rev. 1105, 1122 (1990)).  "[C]reative expression for public

dissemination falls within the core of the copyright's protective purposes."  Id. (citing Campbell

v. Acuff-Rose Music, Inc., 510 U.S. 569, 586 (1994)).

The Gundlach image, however, is generally stock photography, used as commercial filler,

as it was in the Barron's article.  (PSOF, Ex. 4.)  It is not creative expression.  It will not appear

in any art gallery or installation.  While it is no less deserving of copyright protection, Plaintiff

concedes that stock photography like Michael Grecco's, when considered in a fair use setting,

"weigh[s] 'slightly' in the defendant's favor … when [as here] 'interest derives from their

content, not their composition.'"  (Pl.'s Br. at p.13 (citing BWP Media USA, Inc. v. Gossip Cop

Media, Inc., 196 F. Supp. 3d 395, 408 (S.D.N.Y. 2016).)  See also Bill Graham Archives, 448

F.3d at 612 ("[T]he second factor may be of limited usefulness where the creative work of art is

being used for a transformative purpose." (citing Campbell, 510 U.S. at 586); see also Defs.'

Resp. No. 33; DCSOF, at ¶¶ 44-47.)  As Plaintiff concedes, this factor weighs in favor of fair

use.

### 4.   Valuewalk's Use of The Alleged Gundlach Image Was Minimal to Serve the Purpose of the Fair Use.

This Court has been clear that "copying [an entire work] does not necessarily weigh

against fair use because copying the entirety of a work is sometimes necessary to make a fair use

of the image.  Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d at 613 (citing Kelly v.

Arriba Soft Corp., 336 F.3d 811, 821 (9th Cir. 2003) (concluding that images used for a search

engine database are necessarily copied in their entirety for the purpose of recognition); Nunez v.

Caribbean Int'l News Corp., 235 F.3d 18, 24 (1st Cir. 2000) (concluding that to copy any less

than the entire image would have made the picture useless to the story)).  Further, "the third-

factor inquiry must take into account that the 'the extent of permissible copying varies with the

purpose and character of the use.'"  Bill Graham Archives, 448 F.3d at 613 (citing Campbell v.

Acuff-Rose Music, Inc., 510 U.S. 569, 586-87 (1994)).

Here, as in Bill Graham Archives, while Valuewalk used the entirety of the alleged

Gundlach Image, it was necessary to the biography, and Valuewalk reduced the size of the

image, and altered it to suit the theme of the work within the resource page.  (Defs.' Resp. No. 14; DCSOF, at ¶¶ 98-99.) That is entirely consistent with fair use.

**5.      There is No Market For The Alleged Gundlach Image.**

In addressing the fourth factor, "[t]he court looks to not only the market harm caused by the particular infringement, but also to whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work."  Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d at 613 (citing Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 568 (1985)).

The truth of the matter is that there is no commercial market for a substantial part of Michael Grecco's photography, including the alleged Gundlach Image.  (DCSOF, at ¶¶ 103-04 ("The stock industry has gone to zero.  There's no viability in the stock industry anymore. Companies like Getty have run the numbers down so far because they're competing with 'I Stock Photo' …"), 105-26.)  Plaintiff makes money not on selling photographs, but shooting "access" shoots for major outlets at low prices, and trolling the Internet for infringements.  (Id., at ¶ 109 ("My collections for infringement far surpass revenues I was getting ten years ago for my syndication and creative stock when that market was a viable market."), 104-109.)  As to the Gundlach Image, outside of the original retention for Barron's, Plaintiff has never sold the Gundlach Image in a commercial context.  (Id., at ¶ 113.)  The only time Plaintiff was paid for that image was by Barron's for $250.  (Id., at ¶ 106.)  Plaintiff exclusively "sells" the Gundlach Image to the public at rates like $3,372, well above comparable image of Jeffery Gundlach selling for $575 on Getty Images.  (Id., at ¶ 111-12, 116.)   No one has ever paid the price at which Plaintiff lists the Gundlach Image.  (Id., at ¶ 113.)  No one has even inquired.  (Id., at ¶ 114.)

Courts must "look at the impact on potential licensing revenues for 'traditional, reasonable, or likely to be developed markets.'" Bill Graham Archives, 448 F.3d at 614 (citing Am. Geophysical Union v. Texaco Inc., 60 F.3d 913, 930 (2d Cir. 1994)).  None exist here. (DCSOF, at ¶¶ 103-04, 110-16.)  Plaintiff has offered nothing, not a single fact in support of this factor.  (Pl.'s Br. at 14.)  This factor, like all the others, weighs in favor of fair use.

* * * * *

In reviewing the factors in totality, there is little question that summary judgment should be denied.

## C.  PLAINTIFF HAS FAILED TO DEMONSTRATE NO GENUINE ISSUE OF MATERIAL FACT AS TO WHEN PLAINTIFF, BY REASONABLE DILIGENCE, SHOULD OF HAVE KNOWN OF ANY ALLEGED INFRINGEMENT OR ENTITLEMENT OF JUDGMENT AS A MATTER LAW.

"No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the cause of action arose."  17 U.S.C.A. § 507.  Defendants argue that it is entitled to summary judgment because "[t]here is no evidence that plaintiff was aware of the 2012 infringing work until discovery in this action."  (Pl.'s Br. at p.16.)

But that is not the law.  The statute of limitations defense is available if plaintiff (1) knew or (2) by exercise of reasonable diligence should have known of the alleged infringement. Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 125, (2d Cir. 2014) (holding that "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement").  The discovery rule "starts the limitations period when 'the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.'" Energy Intelligence Group, Inc. v. Scotia Capital (USA) Inc., No. 16-CV-00617, 2017 U.S. Dist. LEXIS 13102, at *4 (S.D.N.Y. Jan. 30, 2017) (internal quotation marks omitted).

Conducting a Google image search is reasonable and would have put Plaintiff on notice of any alleged infringement. Indeed, Plaintiff conducts regular Google image searches with his employees, and even now has a service, Image Rights, Inc. to conduct those searches. (DCSOF, at ¶ 128-29, 132-33) The only dispute between the parties is Plaintiff's false claim that Google did not allow image searches prior to 2015 – which Google disputes. (Id., at ¶¶ 130-31.) Google is clear that it started its image search capability in June 2011, well beyond the three-year statute of limitation for the alleged infringement. (Id., at ¶ 131 (Wikipedia, "Google Images," available at https://en.wikipedia.org/wiki/Google_Images ("Google Images is a search service owned by Google and introduced on July 12, 2001, that allows users to search the Web for image content. **In June 2011**, Google Images began to allow for reverse image searches directly in the image search-bar (that is, without a third-party add on, such as the one previously available for Mozilla Firefox). This feature allows users to search by dragging and dropping an image into the search-bar, uploading an image, selecting a URL, or 'right-clicking' on an image.").).)

To the extent this is a question of fact at all, the issue of reasonable diligence should be tried to a jury. Summary judgment should be denied.

### D.   PLAINTIFF HAS FAILED TO DEMONSTRATE NO GENUINE ISSUE OF MATERIAL FACT AS TO THE DEFENSE OF COPYRIGHT MISUSE OR ENTITLEMENT TO JUDGMENT AS A MATTER OF LAW.

As an affirmative defense to any alleged infringement, Defendants have alleged copyright misuse under its Fifth Affirmative Defense. (Ans., at p. 8.) Plaintiff has moved for summary judgment based upon its claim that "VW admitted that it had no evidence that MGP acted to restrain trade in a market (such as the market for stock photographs) other than by enforcement of its copyrights." (Pl.'s Br. at p.16.) Valuewalk has never made any such admission, but has developed a substantial record of misuse. (Defs.' Resp. No. 20; DCSOF, at ¶¶ 104-26.)

14

Plaintiff does not appear to challenge the legitimacy of the copyright misuse defense, which has been adopted by several courts in this district.  Coleman v. ESPN, Inc., 764 F. Supp. 290, 295, (S.D.N.Y. May 6, 1991) ("[S]ince the more recent cases hold that copyright misuse is a cognizable defense, plaintiffs' motion for summary judgment dismissing the defense as a matter of law is denied."); Broadcast Music, Inc. v. Hearst/ABC Viacom Entertainment Services, 746 F. Supp. 320, 328 (S.D.N.Y. 1990) ("[T]he Court is persuaded by the more recent cases that the affirmative defense of copyright misuse is cognizable."); see also John Wiley & Sons, Inc. v. Book Dog Books, LLC, No. 13-CV-0816, 2016 U.S. Dist. LEXIS 127307, *6, *8 (S.D.N.Y. Sept. 19, 2016) ("The defense of copyright misuse, to the extent it exists, is simply a 'species of unclean hands, and finds its origin' in that equitable doctrine." (citing Saks Inc. v. Attachmate Corp., No. 14-CV-4902, 2015 U.S. Dist. LEXIS 52867 (S.D.N.Y. Apr. 17, 2015)).

Nor does Plaintiff appear to reject that the doctrine of copyright abuse has been adopted by several courts to respond the kind of abuse that is only rarely seen, as in this case by an individual like Michael Grecco, who is not seeking to enforce his copyrights but to use the copyright laws as "leverage" to manipulate the market, and create a stock photography market for his work where none otherwise exists, through threats of litigation to maintain artificial prices for his work, obstructing the fair market competition and negotiation that generally establishes prices.  (DCSOF, at ¶¶ 104-26.)  In Coach, Inc. v. Kmart Corps., 756 F. Supp. 2d 421, 428-429 (S.D.N.Y. 2010), the Court recognized that both the Fourth and Ninth Circuits have held that "copyright misuse applies to any attempt to broaden the scope of a copyright monopoly that violates the public policy underlying copyright law."  Id. (citing Lasercomb Am., Inc. v. Reynolds, 911 F.2d 970, 978 (4th Cir. 1990); Practice Mgmt. Info. Corp. v. Am. Medical Assoc, 121 F.3d 516, 521 (9th Cir. 1997).  Additionally, the Seventh Circuit has applied the doctrine

15

where there is an antitrust violation, as there is here, where Michael Grecco is clearly acting to restrain trade, by engaging in market manipulation practices.  <u>Assessment Techs. of WI, LLC v. WIREdata, Inc.</u>, 350 F.3d 640, 647 (7th Cir. 2003).

As to misuse, Valuewalk has established that:

(1)   Selling stock photography licenses is no longer a "viable market" for Plaintiff. Michael Grecco has admitted that, "The stock industry has gone to zero.  There's no viability in the stock industry anymore.  Companies like Getty have run the numbers down so far because they're competing with 'I Stock Photo' …"

(2)   So instead, Michael Grecco does "access" photoshoots of popular figures for large publications at low rates, in the case of Jeffrey Gundlach, for $1,200.

(3)   He sold the Gundlach image to Barron's for only $250, for a standard perpetual online use license.

(4)   Then he uses his copyright in the images to threaten alleged infringing uses and artificially set inflated rates for his photography.

(5)   Through this practice, Plaintiff generates settlements in the range of "between $5,000 and $30,000," where he could never have earned any money actually selling his photographs.

(6)   Michael Grecco testified, "My collections for infringement far surpass revenues I was getting ten years ago for my syndication and creative stock when that market was a viable market."

(7)   Plaintiff owns MGP Stock Photos.

(8)   MGP Stock Photos is the exclusive licensor of the Gundlach Image.

(9)   Plaintiff advertises the Gundlach Image for sale at rates of $3,372.

(10)   Plaintiff has never sold the Gundlach image at issue in this litigation in any commercial market transaction or through MGP.

(11)   No one has ever even inquired about a license for the Gundlach image.

(12)   The only time anyone has ever purchased one of his pictures of Jeffrey Gundlach outside of his original shoot with Barron's, was when Barron's purchased a second for only $300 of a similar digital Gundlach image.

(13)   Comparable images of Jeffrey Gundlach are available on Getty Images for $575 for a perpetual online license.

(14)   After his "access" shoots, in this case, for Barron's, Michael Grecco does not immediately stop alleged infringing use of his copyrighted work, but allows unauthorized usage of Plaintiff's copyright to proliferate, making it more and more difficult for individuals to determine any copyrights to the image, to the point where it begins to appear as a free license image on Google.com.

(15)   Michael Grecco does not contact Google.com to quickly and efficiently remove access to the infringing images, because there is no financial return to Plaintiff.

(16)   Michael Grecco uses the mistaken infringements to threaten litigation, statutory damages and attorney's fees, using the copyright laws to "leverage" higher payments than he could receive by actually selling his work.

16

(17)   Michael Grecco then uses the settlements he receives to maintain inflated rates for his photography.  He sent an email stating, "Today I completed negotiations for a license for the Financial Times of London for a $13,500 license for one time, one image, editorial use on the web.  Please use this as a benchmark for all license negotiations in the future.  **Internally we will use it to raise the bar for a greater licenses in the future.**" (Emphasis added.)

(18)   With the Gundlach Image, he threatened The Financial Times with litigation, statutory damages and attorneys, and demanded $55,000.

(19)   He was paid $13,500.

(20)   He then distributed the settlement price to his employees to use as an artificial license price for his images.

(21)   He threatened defendants Valuewalk and Wolinsky with litigation, statutory damages and attorneys' fees, claiming that an attached invoice to The Financial Times for $13,500 was a "routine invoice for what my typical licensing fee for web usage is," for his photography, deceptively relying upon but concealing that the invoice was for his threatened litigation with the Financial Times.

(22)   Plaintiff has filed copyright litigation using these tactics throughout the United States alleging infringement.

(23)   Plaintiff has never received a judgment from a judge or a jury on any of his alleged allegations of infringement.

(DCSOF, at ¶¶ 104-26.)  The is not mere enforcement, but seeking to "leverage" the copyright laws for the purpose of market manipulation and create an artificial stock photography market, where that business has long since died, as Michael Grecco admits.  It restrains trade because it artificially inflates the market price for Plaintiffs goods and services by misuse of the copyright laws, which were never intended to allow photographs to inflate their prices in the range of "between $5,000 and $30,000" for pictures they could only sell in the market for $250.

(DCSOF, at ¶¶ 106, 108, 113-14, 116, 120.)

This pattern of abusive litigation to maintain inflated, artificial extortion-rate prices for Plaintiff's photography that no one would otherwise purchase is copyright misuse.  See, e.g., AF Holdings, LLC v. Olivas, No. 12-CV-01401, 2013 U.S. Dist. LEXIS 115932, *9-10 (D. Conn. Aug. 16, 2013) ("[A]lleging a pattern of unsubstantiated, virtually identical suits followed by Plaintiff's solicitation of settlement, Defendant asserts facts that may support a copyright misuse claim.") (international citations omitted) (citing Assessment Technologies of WI, LLC v.

17

WIREdata, Inc., 350 F.3d 640, 647 (7th Cir. 2003) ("[F]or a copyright owner to use an infringement suit to obtain property protection. . . that copyright law clearly does not confer, hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively, is an abuse of process."); UMG Recordings, Inc. v. Lindor, 531 F. Supp. 2d 453, 458 (E.D.N.Y. Nov. 30, 2007) (copyright misuse where "the copyright owner has used its copyright to gain an impermissible competitive advantage"); Bourne v. Walt Disney Co., No. 02-CV-6400, 2003 U.S. Dist. LEXIS 2818, at *10 (S.D.N.Y. Mar. 3, 2003) ("The defense of copyright misuse is based upon the principle that copyright holders may not leverage their copyright monopoly to allow them to control of areas outside the monopoly.").

Using the threat of litigation to "leverage" artificial prices is copyright misuse.  See. Alden-Rochelle, Inc. v. American Soc. of Composers, Authors & Publishers, 80 F. Supp. 888, 893-95 (S.D.N.Y. 1948) (finding an antitrust violation where copyright owners pooled their copyrights, creating the power to fix prices).

Summary judgment should be denied.

## II.   PLAINTIFF HAS NOT SHOWN AND AS A MATTER OF LAW CANNOT SHOW THAT JACOB WOLINSKY IS VICARIOUSLY LIABLE FOR INFRINGING ANY ALLEGED COPYRIGHT OWNED BY PLAINTIFF.

Under Count II, Plaintiff asserts claims of "vicarious and contributory infringement" against "Wolinsky and persons presently unknown, identified as Does 1-10," which while not specified are also claims under 17 U.S.C. § 501.  (Compl. at ¶¶ 60-67.)  Since the Court dismissed the complaint in its entirety against John Does #1-10, Wolinsky is the only named defendant under this count.  [D.E. No. 69.]  As to defendant Wolinsky, Defendants demonstrated in their motion for summary judgement, which is referenced and incorporated as if stated fully herein, that Plaintiff has failed to show that Wolinsky is personally liable under any theory of

vicarious liability, and therefore the remaining infringement claims against him under Count II should be dismissed.  (See Pl.'s Mem. Of Law in Supp. Of Partial Summ. Judg., at pp.10-13)

In its motion, Plaintiff reels off a string of citations to cases that have nothing to do with this case or the facts that Plaintiff purports to have proven.  (Pl.'s Br. at pp.5-10.)  The string of citations cannot substitute for the gross deficiency in Plaintiff's motion, that it boils down to one allegation that defendant Wolinsky "ultimately controlled the Valuewalk.com website.  He testified that he ultimately did."  (Id., at p. 10.)  There is no citation to the record for this statement.  There is no factual basis.  This ultimate legal conclusion is based on three facts: (1) Wolinsky had the title but not the responsibility of an "Editor-in-Chief," (2) he is the sole member and sole executive officer of Valuewalk, and (3) and that he asked an independent contractor to select several profiles to create and independently create them.  (Id.)

None of those facts relate to the infringement in this case, however.  As to the infringement, Plaintiff merely claims that even though an independent contractor acting outside the scope of her authority published an image without defendant Wolinsky's knowledge or consent, he is somehow liable.  No case in the United States has ever adopted this far-fetched view.

First, Plaintiff's entire case rests on the argument that the potential to police is sufficient to create vicariously liability.  This theory has been rejected Berry v. Deutsche Bank Trust Co. Ams., No. 07-CV-7634, 2008 U.S. Dist. LEXIS 91561, *12-*13 (S.D.N.Y. Oct. 21, 2008) ("The mere fact that the [defendants] could have policed [the infringer] . . . is insufficient to impose vicarious liability." (internal quotation marks omitted) (alternation in original) (citing Artists Music Inc. v. Reed Publ'g USA, Inc., No. 93-CV-3428, 1994 U.S. Dist. LEXIS 6395, at *16 (S.D.N.Y. May 17, 1994)).

It has been rejected because every corporate parent would be subject to liability under this theory, which this Court has also rejected.  Mere ownership of a corporate entity is insufficient to establish either vicariously liability.  See, e.g., Mayimba Music, Inc. v. Sony Corp. of Am., No. 12-CV-1094, 2014 U.S. Dist. LEXIS 152051, at *35 (S.D.N.Y. Aug. 19, 2014) ("A parent-subsidiary relationship, standing alone, is not enough to state a claim for vicarious liability against a parent for the actions of its subsidiary." (citing cases)); see also Broadvision Inc. v. Gen. Elec. Co., No. 08-CV-1478, 2009 U.S. Dist. LEXIS 45862, at *4 (S.D.N.Y. May 5, 2009) (stating that plaintiff "must show more than just a legal relationship between the parent and the subsidiary" to "state a claim for vicarious liability against [the] parent for the actions of its subsidiary").  Mere corporate officer status is insufficient, absent some approval or participation in the infringement.  See, e.g., Carell v. Shubert Org., Inc., 104 F. Supp. 2d 236, 271 (S.D.N.Y. 2000); Warren v. John Wiley & Sons, Inc., 952 F. Supp. 2d 610, 619 (S.D.N.Y. 2013) (quotations, brackets and citation omitted) ("Where a complaint lacks any description of acts that could lead to the conclusion of direct copyright infringement, or allegations of authorization or participation that would indicate vicarious liability or contributory infringement, claims sounding in those theories must be dismissed.").

Second, Plaintiff claims, without any basis, that "Valuewalk received some advertising revenue … when readers viewed the Gundlach Profile page."  (Pl.'s Br. at p.10.)  This is pure fiction.  Plaintiff does not explain how 4,573 views on the resource page somehow magically translates into "some advertising revenue."  And Valuewalk has not been able to identify any evidence of any revenue from the resource page, making this a genuine issue of material fact. (Defs.' Resp. No. 20.; DCSOF, at ¶ 49.)

<u>Third</u>, Plaintiff asserts (again without any evidence), that "there is no genuine dispute that content, including infringing content, acted as 'a draw' for users to visit ValueWalk's website as the only reason to visit ValueWalk is to view its content."  This is based upon one sentence taken out of context that "p[eople] like attractive pic[tures]."  (Pl.'s Br at p.11.).  The full context shows exactly the opposite of what Plaintiff's tries to prove: writer Brendan Byrne completely rejected the premise of Plaintiff's case, stating to Wolinksy that "But, I'm more than happy with a bizarre stock photo that works.  I figure they've already visited the site because of interest in the story/idea, etc.  I don't know anyone who searches for the image that accompanies the piece before clicking on it to read."  Wolinsky agreed with that premise, stating "LOL agreebut [sic] ppl like attractive pic – its hot chick gets more eyeballs but those are already in plugin".  (<u>See</u> PSOF, Ex. 11, at p.1; see also DCSOF, at ¶¶ 44-49.)

Moreover, as Defendants demonstrated in their motion for summary judgment, there are over 100,000 pictures and images on <u>www.valuewalk.com</u>.  (DSOF, at ¶ 20.)  Fewer than 5 have been claimed to be infringing.  (<u>Id.</u>, at ¶ 21.)  **That is less than half of a 1/00th of a percent.** Valuewalk has never been found to have infringed a copyright by any authority.  (<u>Id.</u>, at ¶ 22.) The suggestion that Valuewalk and much less Wolinsky has any "obvious and direct financial interest" in infringement is wildly speculative and unfounded.  The Court in <u>Artists Music Inc. v. Reed Publ'g USA, Inc.</u>, No. 93-CV-3428, 1994 U.S. Dist. LEXIS 6395 (S.D.N.Y. May 17, 1994), granted summary judgment on precisely this deficiency: "This Court does not believe that alleged infringements by four of 134 exhibitors in any way affected gate receipts at the Show. Plaintiffs offer no evidence that so much as a single attendee came to the Show for sake of the music played by four out of 134 exhibitors.".  <u>Id.</u> at *17.

Plaintiff's motion should be denied, and summary judgment granted in favor of

Defendants.

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, Defendants respectfully request that the Court deny

Plaintiff's motion for partial summary judgment, and grant such other and further relief as the

Court deems just and appropriate under the circumstances.

Dated: New York, New York      Respectfully submitted,
        July 24, 2017

                        RAY LEGAL CONSULTING GROUP, P.C.

                        By:/s/ John H. Ray, III
                        John H. Ray, III (#JR1177)

                        Ray Legal Consulting Group, P.C.
                        10044 South Leavitt Street
                        Chicago, Illinois 60643
                        (617) 645-3000
                        (312) 940-5831 (fax)

                        jray@raylegalconsulting.com

                        *Attorneys for Defendants Valuewalk, LLC and*
                        *Jacob O. Wolinsky*

## <u>CERTIFICATE OF SERVICE</u>

I, John H. Ray, III, hereby certify that on July 24, 2017, I caused a true and correct copy of the foregoing opposition and accompany statement of undisputed facts, and affidavits, including exhibits, to be served electronically on all parties of record by the Court's CM/ECF system.


/s/ John H. Ray, III
John H. Ray, III (#JR1177)

23