**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC., | **:**  CIVIL ACTION NO. |
| | **:**  1:16-cv-06171-GHW |
| *Plaintiff*, | **:** |
| | **:** |
| | **:** |
| v. | **:** |
| | **:** |
| VALUEWALK, LLC | **:** |
| and | **:** |
| JACOB O. WOLINSKY | **:** |
| | **:** |
| *Defendants.* | **:** |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.      Preliminary Statement                                                    1

II.     Statement of Facts                                                       1

III.    Argument                                                                 1

        A.      Legal Standard                                                   1

        B.      A Jury Could Find That Wolinsky Is Liable For Direct Infringement of    2
                MGP's Work On Evidence That He Participated In Unauthorized
                Copying By A Company He Owned, Directed, and Managed That Had
                No Employees Other Than Himself.

                1.      Law                                                      2

                2.      Application Of Law To Fact                               5

        C.      A Jury Could (And Must) Find That Wolinsky Is Liable For Vicarious    5
                Infringement of MGP's Work On Evidence That He Had The Right
                And Ability To Control The Valuewalk.Com Website And He
                Benefitted From The Infringement By Advertising Payments Or By
                Creating Content To Draw Viewers.

                1.  Law                                                          5

                2.  Application Of Law To Fact                                   10

        D.      A Jury Could Find That Wolinsky Is Liable For Contributory       11
                Infringement Of MGP's Work On Evidence That He Knew Or Should
                Have Known Of Infringement By Contractors Whom He Encouraged
                And Assisted.

                1.      Law                                                      11

                2.      Application Of Law To Fact                               13

        E.      A Jury Could Find That ValueWalk and Wolinsky Are Liable For     14
                Removing Copyright Management Information In Order To Conceal
                Their Infringement.

                1.      Law                                                      14

2.      Application Of Law To Fact                                    16

IV.   CONCLUSION                                                      18

# TABLE OF AUTHORITIES

*Agence France Presse v. Morel*,
769 F. Supp. 2d 295 (S.D.N.Y. 2011) .................... 15

*Aimster Copyright Litigation*,
334 F.3d 643 (7th Cir.2003) .................... 12

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir.2010)2 .................... 2, 12

*Arista Records LLC v. Usenet.com, Inc.*,
633 F. Supp. 2d 124 (S.D.N.Y. 2009) .................... 6

*Bambu Sales, Inc. v. Sultana Crackers, Inc.*,
683 F. Supp. 899 (E.D.N.Y. 1988). .................... 4

*Beyer v. Cty. of Nassau*,
524 F.3d 160 (2d Cir. 2008). .................... 2

*Bounce Exch., Inc. v. Zeus Enter. Ltd.*,
2015 WL 8579023 (S.D.N.Y. Dec. 9, 2015) .................... 15

*Broadcast Music, Inc. v. Hobi, Inc.*,
1993 WL 404152 (M.D.La.1993) .................... 6

*Broad. Music, Inc. v. Mirage Images, Inc.*,
2005 WL 6580656 (E.D. Tenn. Nov. 2, 2005). .................... 3

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
69 F. Supp. 3d 342 (S.D.N.Y. 2014) .................... 7

*Broad. Music, Inc. v. Meadowlake, Ltd.*,
754 F.3d 353 (6th Cir. 2014) .................... 12

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
69 F. Supp. 3d 342 (S.D.N.Y. 2014) .................... 9

*Capitol Records, Inc. v. MP3tunes, LLC*,
48 F.Supp.3d 703 (S.D.N.Y. Sept. 29, 2014) .................... 3

*Chloe v. Queen Bee of Beverly Hills, L.L.C.*,
2011 WL 3678802 (S.D.N.Y. Aug. 19, 2011) .................... 8

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
844 F.3d 79 (2d Cir. 2016)
11

*Ez-Tixz, Inc. v. Hit-Tix, Inc.*,
919 F. Supp. 728 (S.D.N.Y. 1996).
9

*Famous Music Corp. v. Bay State Harness Horse Racing and Breeding Ass'n*,
554 F.2d 1213 (1st Cir.1977)
6, 11

*Gershwin Publishing Corporation v. Columbia Artists Management, Inc.*,
443 F.2d 1159, 1162 (2d Cir.1971)
15

*Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*,
345 F.3d 922 (6th Cir. 2003)
3

*Graham Hanson Design LLC v. 511 9th LLC*,
2011 WL 744801 (S.D.N.Y. Feb. 24, 2011)
16

*Kelly v. Arriba Soft Corp.*,
77 F. Supp. 2d 1116 (C.D. Cal. 1999)
13

*Livnat v. Lavi*,
1998 WL 43221 (S.D.N.Y. Feb. 2, 1998)
9

*McClatchey v. The Associated Press*,
2007 WL 776103 (W.D. Pa. Mar. 9, 2007)
10

*Major Bob Music v. Stubbs*,
851 F.Supp. 475 (S.D.Ga.1994)
11

*Matthew Bender & Co. v. West Publishing Co.*,
158 F.3d 693, 706 (2d Cir.1998)
2

*Minnie Rose LLC v. Yu*,
169 F. Supp. 3d 504, 522 (S.D.N.Y. 2016)
15

*Murphy v. Millennium Radio Grp.*,
650 F.3d 295 (3d Cir. 2011)
12

*Newborn v. Yahoo!, Inc.*,
391 F. Supp. 2d 181 (D.D.C. 2005)
7

*Peer Intern. Corp. v. Luna Records, Inc.*,
887 F.Supp. 560 (S.D.N.Y.1995)
16

*Photographic Illustrators Corp. v. Orgill, Inc.*,

118 F. Supp. 3d 398, 408 (D. Mass. 2015)

8

*Playboy Enterprises, Inc. v. Webbworld, Inc.*,
968 F. Supp. 1171 (N.D. Tex. 1997)

10

*Polygram Int'l Publ'g, Inc. v. Nevada/Tig, Inc.*,
855 F.Supp. 1314 (D.Mass.1994)

15

*Reiner v. Nishimori*,
2017 WL 1545589 (M.D. Tenn. Apr. 28, 2017)

2

*Scott v. Harris*,
550 U.S. 372 (2007).

13

*Screen Gems–Columbia Music, Inc. v. Mark–Fi Records, Inc.*,
256 F.Supp. 399 (S.D.N.Y.1966)

7

*Shapiro, Bernstein & Co. v. H. L. Green Co.*,
316 F.2d 304 (2d Cir. 1963)

6

*Smith v. Mikki More, LLC*,
21 F.Supp.3d 276 (S.D.N.Y.2014)

7

*Southwestern Bell Telephone Co. v. Nationwide Indep. Directory Serv.*,
371 F.Supp. 900 (W.D.Ark.1974)

2

*Spinelli v. City of N.Y.*,
579 F.3d 160, 166 (2d Cir. 2009)

13

*Stanacard, LLC v. Rubard, LLC*,
2016 WL 462508 (S.D.N.Y. Feb. 3, 2016)

15

*Stevens v. Corelogic, Inc.*,
194 F. Supp. 3d 1046 (S.D. Cal. 2016)

9

*Walden Music, Inc. v. C.H.W., Inc.*,
1996 WL 254654 (D.Kan.1996)

2

*Warren v. John Wiley & Sons, Inc.*,
952 F.Supp.2d 610 (S.D.N.Y.2013).

2

*Zann Kwan v. Andalex Grp. LLC*,
737 F.3d 834 (2d Cir. 2013).

Plaintiff Michael Grecco Productions, Inc. ("MGP") submits the following memorandum of law in opposition to the Motion for Partial Summary Judgment on liability for copyright infringement by Jacob O. Wolinsky ("Wolinsky") and for violation of the DMCA by defendants ValueWalk, LLC ("ValueWalk") and Jacob O. Wolinsky ("Wolinsky").

## I.      Preliminary Statement

MGP is the copyright owner of a photographic image (the "Image") that was illegally published on the ValueWalk.com website by Defendants ValueWalk, LLC ("ValueWalk") and Jacob O. Wolinsky ("Wolinsky") without authorization.   MGP submits this Memorandum of Law in opposition to defendants' motion for partial summary judgment for copyright infringement liability against Wolinsky, and against all defendants' motion for judgment on MGP's claim for removal of copyright management information.

## II.     Statement of Facts

The facts are set forth in Plaintiff's Counter-Statement of Uncontested Fact.

## III.     Argument

There is a genuine dispute of fact concerning Wolinsky's liability for direct and contributory copyright infringement.  There is no genuine dispute of fact that Wolinsky is liable for vicarious infringement as argued in MGP's motion for summary judgment.  There is a genuine dispute of fact concerning whether defendants removed MGP's copyright management information from MGP's work before republishing it.   As movants made no effort to allege actually undisputed facts, the burden never shifts to the respondent.

### A.      Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Zann*

*Kwan v. Andalex Grp. LLC,* 737 F.3d 834, 843 (2d Cir. 2013).  A fact is "material" if it could

affect the outcome of the case under the governing substantive law.  *Spinelli v. City of N.Y.,* 579

F.3d 160, 166 (2d Cir. 2009).  In determining whether the movant has met its burden, the Court

must view all facts in the light most favorable to the nonmoving party, but "only if there is a

'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380 (2007).  If the moving

party meets its initial burden, the non-moving party must come forward with "specific facts

showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "A dispute about a 'genuine

issue' exists for summary judgment purposes where the evidence is such that a reasonable jury

could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir.

2008).

> **B.      A Jury Could Find That Wolinsky Is Liable For Direct Infringement of
> MGP's Work On Evidence That He Participated In Unauthorized Copying
> By A Company He Owned, Directed, and Managed That Had No Employees
> Other Than Himself.**
>
> > **1.   Law**

"The owner of a copyright has the exclusive right to—or to license others to—reproduce,

perform publicly, display publicly, prepare derivative works of, and distribute copies of, his

copyrighted work." *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 117 (2d Cir.2010).  Any party

who violates the exclusive rights of the copyright owner "is an infringer, liable for damages

pursuant to 17 U.S.C. § 504." *Warren v. John Wiley & Sons, Inc.,* 952 F.Supp.2d 610, 616

(S.D.N.Y.2013).

An officer, director or employee of a corporation may be liable for all torts by his entity

that he directed, supervised, or participated in. *Minnie Rose LLC v. Yu,* 169 F. Supp. 3d 504, 522

(S.D.N.Y. 2016).  That principle of personal liability for participation in corporate torts applies

to copyright as well as trademark infringement.  *Graham Hanson Design LLC v. 511 9th LLC,*

2011 WL 744801, at *5 (S.D.N.Y. Feb. 24, 2011) ("corporate officers can be held liable for the infringing acts of their corporations if they personally participated in the acts constituting infringement").[1]  The volitional conduct requirement for direct infringement claims against individual owner-operators is met if the defendant entity directed and supervised by the individual defendant "reproduced Plaintiffs' copyrighted photographs…."  *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 355 (S.D.N.Y. 2014) (distinguishing direct infringement liability based on action of entity directed by its owners from contributory infringement based on owners inducing acts of third parties).

     The "moving, active, conscious force" test for liability is satisfied "if a corporate officer was either the sole shareholder and employee, and therefore must have approved of the infringing act, or a direct participant in the infringing activity."  *Chloe v. Queen Bee of Beverly Hills, L.L.C.*, 2011 WL 3678802, at *4-5 (S.D.N.Y. Aug. 19, 2011) (trademark).[2]  As

---

[1] *See also Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.,* 778 F.2d 89, 92 (2d Cir.1985) ("All persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers."); *Babbit Elecs., Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1184 (11th Cir. 1994) ("Specifically, a corporate officer who directs, controls, ratifies, participates in, or is in the moving force behind the infringing activity, is personally liable for such infringement…"); *Luft v. Crown Publishers, Inc.,* 772 F.Supp. 1378, 1379 (S.D.N.Y.1991) ("All persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers.") (quotations and citations omitted); *Wales Indus. Inc. v. Hasbro Bradley, Inc.,* 612 F.Supp. 510, 518 (S.D.N.Y.1985) ("An individual who causes a corporation defendant to infringe copyrights and personally participates in the infringing activity is jointly and severally liable with the corporation for the infringement."); *Pickwick Music Corp. v. Record Prods., Inc.*, 292 F. Supp. 39, 40 (S.D.N.Y. 1968) ("Participation in the tort of copyright infringement makes each participant jointly and severally liable.")

[2] *See also Calvin Klein Jeanswear Co. v. Tunnel Trading*, 2001 WL 1456577, at *6 (S.D.N.Y. Nov. 16, 2001) ("As its sole corporate officer and employee, [individual] defendant unarguably served as the moving, active, conscious force for [corporate defendant's] conduct."); *Pearson Educ., Inc. v. Kumar,* 721 F. Supp. 2d 166, 179–80 (S.D.N.Y. 2010), *abrogated on other grounds*, 523 F. App'x 16 (2d Cir. 2013) ("Kumar [individual] and Dart [entity] are jointly and severally liable for all sales of the Foreign Editions because they are principals in direct infringement. Both participated in the sale and/or distribution of the infringing Foreign Editions.

infringement is a strict liability violation, no intent or knowledge of the infringing act is required for a corporate officer to be found personally liable for the infringing acts which he fomented or participated in on behalf of his or her company.  *Bambu Sales, Inc. v. Sultana Crackers, Inc.,* 683 F. Supp. 899, 913-14 (E.D.N.Y. 1988).  Judgment as a matter of law is granted in favor of defendants who can establish, without any genuine dispute, that they had no involvement in or relationship to the actions that allegedly infringed.[3]

---

Moreover, Kumar owns Dart and directed it to distribute the infringing copies that were sold."); *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 158–59 (S.D.N.Y. 2009) (director and sole shareholder of corporation, which borrowed employees from other entity, was found jointly liable for copyright infringement on plaintiff's motion for summary judgment because he was "the moving force behind the entire business" in which he played a "ubiquitous role" in the companies' activities); *Samet & Wells, Inc. v. Shalom Toy Co.*, 429 F. Supp. 895, 903-04 (E.D.N.Y. 1977), *aff'd,* 578 F.2d 1369 (2d Cir. 1978) ("The evidence leaves no doubt that Weber authorized and supervised production and marketing of Shalom's turtle.  An individual, including an officer or director of a corporation, who participates in the acts constituting infringement is personally liable, jointly and severally with the corporate defendant."); *Pickwick Music Corp. v. Record Prods., Inc.,* 292 F.Supp. 39, 41 (S.D.N.Y.1968) (finding joint and several liability for direct infringement against the three individuals who ran the company); *Symantec Corp. v. Logical Plus, Inc.*, 2009 WL 3416178, at *4 (N.D. Cal. Oct. 20, 2009) ("Because Joseph Chang was the owner and operator of Logical Plus, he is directly liable for the trademark, false designation of origin, and copyright claims.")

[3] *See, e.g., Faulkner v. Nat'l Geo. Soc'y,* 211 F.Supp.2d 450, 472 (S.D.N.Y.2002) (where plaintiffs "*Lessem v. Taylor,* 766 F.Supp.2d 504, 514 (S.D.N.Y.2011) (granting summary judgment to two entities owned by alleged infringing songwriter when there was no evidence that the entities had anything to do with their owner's infringement of plaintiff's work, and they were accused only because of their unrelated association with the individual defendant);  have brought forward absolutely no evidence suggesting that Kodak itself engaged in conduct that violated any of the exclusive rights granted to copyright holders ..."); *Pickwick Music Corp. v. Record Prods., Inc.,* 292 F.Supp. 39, 41 (S.D.N.Y.1968) (judgment for individual defendants whose "ministerial" functions at infringing company did not permit and inference of participation in infringement [while granting judgment of joint and several liability for direct infringement against individuals who, like Wolinsky, actually ran the infringing company ]); *Poindexter v. Cash Money Records*, 2014 WL 818955, at *7 (S.D.N.Y. Mar. 3, 2014) (judgment for defendant when third party infringer admitted that he, not the defendant company, was solely responsible; that he unilaterally put the defendant's logo on his bootlegged record cover; and there was no evidence that that the company was involved).

### 2.     Application Of Law To Fact

There is evidence that Wolinsky satisfies the volitional conduct requirement for direct infringement by directing and supervising the entity, Valuewalk, that copied MGP's photographs.  As VW's founder, president, chief executive officer, and Editor in Chief, Wolinsky directed, controlled, participated in, supervised and approved and/or ratified all action taken by VW and its employees.  *See* response to defendants' Statement of Facts ¶¶ 2, 3, 10, 11, 15.  Valuewalk's contention that it was actually piece-rate independent contractors who controlled Valuewalk is genuinely disputed.  *Id.* at ¶¶ 12, 13.  Wolinsky was the moving force being the infringing work.  *Id.* at 14, 24, 35.  There is evidence that he directed contractors to download images from the internet without any regard for the rights of copyright owners and that he made no provision for avoiding infringement prior to May 2016, after VW was sued.  *Id*. at ¶¶ 15, 16, 17.  Under Wolinsky, VW was a habitual infringer whose lawyer advised, in response to infringement claims, "just ignore for now as always."  *Id*. at ¶¶ 16, 18, 21.  There is evidence that he knew or should have known of VW's infringements but made no effort to stop them until May of 2016.  *Id*. at ¶¶ 16, 18, 23.  He promoted contempt for the protections of the Copyright Act among contractors.  *Id*. at ¶16.

**C.     A Jury Could (And Must) Find That Wolinsky Is Liable For Vicarious Infringement of MGP's Work On Evidence That He Had The Right And Ability To Control The Valuewalk.Com Website And He Benefitted From The Infringement By Advertising Payments Or By Creating Content To Draw Viewers.**

### 1.  Law

"[A] defendant is vicariously liable for infringement where 'the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials—even in the absence of actual knowledge that the copyright monopoly is being

impaired.'" *Smith v. Mikki More, LLC*, 21 F.Supp.3d 276, 281 (S.D.N.Y.2014).  In order to establish vicarious liability, a plaintiff must demonstrate that the defendant (1) had the right and ability to supervise the infringing activity and (2) has a direct financial interest in such activities. *Gershwin Publishing Corporation v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971) ("[O]ne may be vicariously liable if he had the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.")  Vicarious infringement "does not include an element of knowledge or intent on the part of the vicarious infringer." *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 156 (S.D.N.Y. 2009).

As to the first element, ability to supervise is means the authority to control a setting.  "A defendant's ability to block infringers' access to a particular environment for any reason constitutes proof of its right and ability to supervise and control the infringing activities." *Arista Records, Inc. v. Mp3Board, Inc.,* 2002 WL 1997918, at *11 (S.D.N.Y. Aug. 29, 2002).  Liability is premised on the individual being *in a position* to police the conduct of an infringer.  *Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908, 913–14 (D. Conn. 1980).  "[T]he test is not "control," it is "the right and ability to supervise."  *Broad. Music, Inc. v. Mirage Images, Inc.*, 2005 WL 6580656, at *10 (E.D. Tenn. Nov. 2, 2005).  Vicarious liability flows from "failure to police the conduct of the primary infringer".  *Gershwin Publ'g. Corp.*, 443 F.2d at 1161.[4]

---

[4] Delegation of a function in which the infringement occurred is no defense.  For example, a court held that an infringing website's sole officer, director, and shareholder who handled most of its business, financial, and legal matters had the required supervisory authority over the infringements.  *Playboy Enterprises*, 968 F. Supp. at 1171.  His defense that he did not control individual outsiders who initially uploaded infringing work was irrelevant as "[t]he only relevant question regarding the element of control is whether defendants had the right and ability to control what occurred on the Neptics' website."; *see also Barnaby Music Corp. v. Catoctin Broad. Corp. of N.Y.*, 1988 WL 84169, at *3 (W.D.N.Y. Aug. 10, 1988) (operator of a radio station was liable for infringing public performances of music even when he delegated responsibility for music selection to a program director and told staff not to play music licensed by plaintiff  as he was "in a position to police the conduct of the 'primary' infringer"); *Capitol*

Corporate officers are routinely found to have "the right and ability to supervise the infringing activity and also [give] a direct financial interest in such activities" by saving corporate costs. *Shapiro, Bernstein & Co. v. H. L. Green Co*., 316 F.2d 304, 307 (2d Cir. 1963) (store owner without knowledge of infringement was vicariously liable for the sale of infringing records made by a concessionaire which operated the store's record department as owner had right to supervise and received a percentage of the infringer's gross receipt); *Peer Intern. Corp. v. Luna Records, Inc.,* 887 F.Supp. 560, 565 (S.D.N.Y.1995) (company president and sole shareholder who "determine[s] what is done and what isn't done in the corporation" is vicariously liable); *Southwestern Bell Telephone Co. v. Nationwide Indep. Directory Serv*., 371 F.Supp. 900, 906 (W.D.Ark.1974) ("Officers or directors of a corporation guilty of infringement are individually liable if ... they are sole shareholders") (holding officers and directors who were the only stockholders liable for patent infringement).

A principal need not exercise its supervisory powers to be deemed capable of doing so. *See Gershwin,* 443 F.2d at 1161–63. Indeed, the danger that principals will not supervise provides the rationale for the remedy:

> A defendant's ignorance about the infringement or the performances does not blunt vicarious liability. The point of the doctrine is to encourage people like Roy to police performances at their restaurants in the first place.

*Broad. Music, Inc. v. Meadowlake, Ltd.*, 754 F.3d 353, 355 (6th Cir. 2014) (citation omitted).

---

*Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 660 (S.D.N.Y. 2013) (operator who exercised control over website's content, user access, and sales was liable for vicarious infringement); *Broad. Music, Inc. v. Blueberry Hill Family Restaurants, Inc*., 899 F. Supp. 474, 481 (D. Nev. 1995)(president and sole shareholder of company that operated five restaurants was liable for infringing activity even though he was not day-to-day manager); *Realsongs v. Gulf Broad. Corp*., 824 F. Supp. 89, 92 (M.D. La. 1993) (operator of radio station who policed infringement by his own staff was liable for infringements of unrelated customer who bought radio time because operator had ultimate control over his station).

> The question before the Court is not whether the Lamberts exercised or delegated responsibility to another individual, but whether the Lamberts retained the right to control the copyright activities. The Lamberts had the ultimate authority to determine whether to sell air time to individuals who may be primary infringers. Officers and shareholders of corporations in similar situations have been held liable for copyright infringement as long as they had the right and ability to control the infringing activities. Thus, the Lamberts can be deemed to have acquiesced in the program because they allowed the ministers to select the program's content, even if the ministers were instructed not to perform copyrighted music. Thus, the Court finds that the defendants had the right and ability to control the infringing activity at their radio station.

*Realsongs* 824 F. Supp. at 92.[5]

As test is legal authority to supervise, "[w]hether an individual defendant has the required supervisory authority and financial interest are issues of law to be decided by the court." *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 968 F. Supp. 1171, 1176 (N.D. Tex. 1997); *Realsongs*, 824 F. Supp. at 91; Rottlund *Co. v. Scott Larson Const., Inc.*, 2004 WL 742054, at *5 (D. Minn. Mar. 4, 2004).

The second element of the vicarious infringement test requires showing a causal relationship between the infringing activity and any financial benefit that the defendant gains. *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99 (2d Cir. 2016) (verdict of vicarious liability against CEO of website supported when he "was the near-exclusive funder of MP3tunes and thus had an 'obvious and direct financial interest' in infringement that drew

---

[5] Where company principals are not held vicariously liable it is because, notwithstanding a right to supervise, they did not have the ability. *Rottlund Co.*, 2004 WL 742054, at *5 (vice president/ treasurer/ bookkeeper of homebuilding company run by her President husband  was not vicariously liable for alleged design infringement by architects hired by her husband as there was no evidence she had ability to supervise);  *Ford Motor Co. v. B & H Supply, Inc.*, 646 F. Supp. 975, 990 (D. Minn. 1986) (four defendant top corporate principals/ owners were vicariously liable for their companies' infringement of package designs; but court found a fifth defendant was not where the only evidence was that he was a minority shareholder and treasurer of a corporation); *Bartell v. Onbank, Onbank & Trust Co*., 1996 WL 421189, at *2 (N.D.N.Y. July 19, 1996) (mere membership on Board of Directors did not show right or ability to supervise infringing activities).

subscribers to MP3tunes.com.")  Financial benefit does not require that revenue flow from the infringement so long as the defendant has economic incentives for tolerating unlawful behavior. *Walden Music, Inc. v. C.H.W., Inc.,* 1996 WL 254654, at *5 (D.Kan.1996) ("The fact that defendant' entrepreneurial enterprise is not profiting is not a defense to the plaintiffs' copyright infringement claims."); *Broadcast Music, Inc. v. Hobi, Inc.,* 1993 WL 404152, at *3 (M.D.La.1993) (holding defendant vicariously liable because it operated with goal of making a profit, even though it did not actually make one).

In the alternative, the financial benefit test is met "where infringing material acts as a 'draw' to attract subscribers to a defendant's business." *Capitol Records, Inc. v. MP3tunes, LLC,* 48 F.Supp.3d 703, 712 (S.D.N.Y. Sept. 29, 2014) (internal quotation omitted).  As with money-making, the "draw" need not be substantial.  *Arista Records LLC,* 633 F.Supp.2d at 156–157 ("[T]he law is clear that to constitute a direct financial benefit, the 'draw' of infringement need not be the primary, or even a significant, draw-rather, it need only be a draw."); *Capitol Records, Inc.* 48 F. Supp. 3d at 712 ("Robertson derived a financial benefit by using the infringing material to draw additional subscribers. … A profit need not be realized to satisfy the standard for financial benefit."); *McClatchey v. The Associated Press*, 2007 WL 776103, at *4 (W.D. Pa. Mar. 9, 2007) (for vicarious liability "Plaintiff need not demonstrate a direct connection between APs' revenues and her photograph."); Playboy *Enters., Inc.* 968 F.Supp. at 1177 (defendant found vicariously liable because "plaintiff's photographs enhanced the attractiveness of the Neptics' website to potential customers"); *Famous Music Corp. v. Bay State Harness Horse Racing and Breeding Ass'n,* 554 F.2d 1213, 1214 (1st Cir.1977) (holding racing association vicariously liable for infringing broadcast of music to entertain race-goers "when they were not absorbed in watching the races"); *Polygram Int'l Publ'g, Inc. v. Nevada/Tig, Inc.,*

855 F.Supp. 1314, 1332 (D.Mass.1994) (finding that music used to cultivate trade show

attendees' interest provided direct financial benefit to trade show); *Major Bob Music v. Stubbs,*

851 F.Supp. 475 (S.D.Ga.1994) (bar derived direct financial benefit from infringing musical

performances on its premises).

### 2.    Application Of Law To Fact

Applying the above-stated law to the record evidence, a reasonable jury could find that

Wolinsky had the right and ability to supervise and control the infringing activity on

ValueWalk.com website and its employees/contractors.  *See* response to defendants' Statement

of Facts ¶¶ at ¶¶ 2, 3, 10, 11, 15.  He is the Editor-in-Chief of ValueWalk.com; the sole member

of its owner, ValueWalk, LLC; and he is the sole executive officer who answers to no

supervisor.  *Id.* at ¶¶ 12, 13.  Acting as Editor in Chief, he personally assigned the Gundlach

profile to a contractor employee to prepare for publication.  It is irrelevant if, as he claims, a

piece-work employee uploaded the unlicensed Gundlach Image without his participation, and

there is evidence on which a jury could find it more likely than not that he, not she, did so.  The

issue is not whether he controlled his contractor (though he clearly gave her the assignment).  It

is whether he ultimately controlled the valuewalk.com website.  He testified that he ultimately

did.

A jury could find that the second element is met in two ways, either of which suffices.

ValueWalk owns ValueWalk.com.  Id. at ¶¶ 2, 3.  ValueWalk received some advertising

revenue, which need not be substantial, when readers viewed the Gundlach Profile page.  *Id.* ¶ 9.

In turn, Wolinsky received income from the operation of the website which charged advertisers

when users viewed the page.  *Id.* ¶¶ 53. The amount of the benefit, or even the realization of a

profit, is irrelevant as infringement liability does not turn on whether the infringer's business acumen.

In the alternative content, including infringing content, acted as "a draw" for users to visit ValueWalk's website as the only reason to visit ValueWalk is to view its content.  ValueWalk made copious use of photographs and contractors were required to attach graphics to every article, and prior to 2016 were encouraged to download them from the internet without any restraints because, as Wolinsky told a contractor, "ppl like attractive pic." *Id.* ¶¶ 4,5.  VW claims to have published over 100,000 images. *Id.* ¶ 20.

> **D.    A Jury Could Find That Wolinsky Is Liable For Contributory Infringement Of MGP's Work On Evidence That He Knew Or Should Have Known Of Infringement By Contractors Whom He Encouraged And Assisted.**

> **1.    Law**

A plaintiff must allege that the defendant, "with knowledge of the infringing activity, induce[d], cause[d], or materially contribute[d] to the infringing conduct of another." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971).  Contributory infringement liability is based upon the defendant's relationship to the direct infringement: "if the defendant was implicated in the acts constituting the direct infringement, it may be held liable for contributory infringement."  *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 732 (S.D.N.Y. 1996).

The first or "contribution" prong of contributory infringement is satisfied by "personal conduct that encourages or assists the infringement."  *Matthew Bender & Co. v. West Publishing Co.,* 158 F.3d 693, 706 (2d Cir.1998).  Contribution was recently summarized:

> Contributory liability exists if the defendant engages in personal conduct that encourages or assists the infringement.  An allegation that a defendant merely provided the means to accomplish an infringing activity is insufficient to establish a claim for contributory infringement.  Rather, participation in the infringement

11

must be substantial and the authorization or assistance must bear a direct
relationship to the infringing acts, and the contributory infringer must have acted
in concert with the direct infringer.

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 356–57 (S.D.N.Y.

2014) (internal citations and quotations omitted) (allegations that defendant owner of website set

up nominal volunteer web-masters and gave them directions that encouraged theft of

photographs stated a claim for the contribution element of contributory infringement).

As to the second, "knowledge" prong, "the knowledge standard is an objective one;

contributory infringement liability is imposed on persons who 'know or have reason to know'"

of the direct infringement,…" *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010).

Even "a party without actual knowledge of the particular instances of infringement may still be

found liable as a contributory infringer; constructive knowledge is sufficient to establish

liability." *Ez–Tixz, Inc. v. Hit–Tix, Inc.,* 919 F.Supp. 728, 732 (S.D.N.Y.1996).[6]

Willful blindness will not immunize a defendant.  *Arista Records, LLC v. Doe 3*, 604

F.3d 110, 118 (2d Cir. 2010) ("[w]illful blindness is knowledge"), quoting *In re: Aimster*

*Copyright Litigation,* 334 F.3d 643, 650 (7th Cir.2003).  Significantly for our case, a party that

has been alerted to past infringements, but has not prevented the subsequent infringement in

dispute, has constructive knowledge of the subsequent infringement.  *Newborn v. Yahoo!, Inc.*,

391 F. Supp. 2d 181, 185 (D.D.C. 2005) ("The second prong of the contributory copyright

---

[6] *See also R & R Recreation Products, Inc. v. Joan Cook Inc.,* 1992 WL 88171, at *3 (S.D.N.Y.
Apr. 14, 1992) (material question of fact existed on knowledge of infringement when defendant
catalog publisher received payment after identifying best-selling watch to third party who made
knock-offs, regardless of lack of proof  of actual knowledge and despite defendant's advice to
third party to clear his product with legal counsel); *Screen Gems–Columbia Music, Inc. v. Mark–
Fi Records, Inc.,* 256 F.Supp. 399, 403–04 (S.D.N.Y.1966) (summary judgment denied to ad
agency that promoted sale of infringing record when below-market price of infringing record
album could have given constructive notice of infringement, and when agency's inquiry about
releases for sound recordings, but not compositions, could support inference of willful blindness
to composers' copyrights).

infringement analysis—the knowledge requirement—is satisfied 'in those cases where a party has been notified of specific infringing uses of its technology and fails to act to prevent future such infringing uses, or willfully blinds itself to such infringing use' ").

Summary judgment or dismissal of contributory infringement claims based on lack of knowledge is restricted to defendants who had no involvement with the direct infringer from which actual or constructive knowledge could be inferred.  *Stanacard, LLC v. Rubard, LLC*, 2016 WL 462508, at *14 (S.D.N.Y. Feb. 3, 2016) (granting summary judgment on contributory liability in favor of passive investor in alleged infringer, but denying judgment as to another individual because, due to his prior work with the plaintiff, "a reasonable juror [could] conclude that, if Rubard's software infringes Stanacard's copyright, Zaytsev must have known it.");  *Livnat v. Lavi*, 1998 WL 43221, at *4 (S.D.N.Y. Feb. 2, 1998) (granting summary judgment on contributory infringement claim against intermediary who showed plaintiff's images to third party infringer who rejected them, then third party infringer later published them without authorization from either intermediary or plaintiff);  *Mark–Fi Records, Inc.,* 256 F.Supp. at 404 (granting summary judgment to officer of defendant entity who was on leave of absence during relevant period).

### 2.      Application Of Law To Fact

There is evidence on which a jury could find personal conduct by Wolinsky that encouraged or assisted the infringement by Valuewalk and/or its contractors.  As VW's founder, president, chief executive officer, and Editor in Chief, Wolinsky directed, controlled, participated in, supervised and approved and/or ratified all action taken by VW and its employees.  *See* response to defendants' Statement of Facts ¶¶ 2, 3, 10, 11, 15.  While Valuewalk contends that it was actually piece-rate independent contractors who controlled Valuewalk, that is genuinely

disputed. *Id.* at ¶¶ 12,13.  Wolinsky was the moving force being the infringing work.  *Id.* at 14, 24, 35.

A jury could also find that Wolinsky knew or hade reason to know of VW's and/or its contractors' infringements.  There is evidence that he directed contractors to download images from the internet without any regard for the rights of copyright owners and that he made no provision for avoiding infringement prior to May 2016, after VW was sued.  *Id*. at ¶¶ 15, 16, 17. Wolinsky had at least constructive knowledge of infringement as he was alerted to past infringements, but he did not prevent the subsequent infringement in dispute.  *Id*. at ¶¶ 16, 18, 23.  Under Wolinsky, VW was a habitual infringer whose lawyer advised, in response to infringement claims, "just ignore for now as always."  *Id*. at ¶¶ 16, 18, 21.  He promoted contempt for the protections of the Copyright Act among contractors.  *Id*. at ¶16.

### E.   A Jury Could Find That ValueWalk and Wolinsky Are Liable For Removing Copyright Management Information In Order To Conceal Their Infringement.

#### 1.   Law

Section 1202 of the DMCA deals with "copyright management information" ("CMI"). Section 1202(b) provides that "[n]o person shall, without the authority of the copyright owner or the law— (1) intentionally remove or alter any copyright management information, [...]"  The DCMA defines CMI as "any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form":

> (1) The title and other information identifying the work, including the information set forth on a notice of copyright.

> (2) The name of, and other identifying information about, the author of a work.

> (3) The **name of**, and other identifying information about, **the copyright owner** of the work, including the information set forth in a notice of copyright....

17 U.S.C. § 1202(c).

14

A cause of action under § 1202 of the DMCA "potentially lies whenever the types of information listed in § 1202(c)[ ] and 'conveyed in connection with copies of a work including in digital form' [are] falsified or removed, regardless of the form in which that information is conveyed." *Murphy v. Millennium Radio Grp*., 650 F.3d 295, 305 (3d Cir. 2011) ("gutter credit" identifying author of photograph is CMI); *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 306 (S.D.N.Y. 2011) ("notations "Morel," "daniel morel," and "photomorel" in conjunction with photographs fall within the scope of CMI under the plain language of the statute."); *Bounce Exch., Inc. v. Zeus Enter. Ltd.*, 2015 WL 8579023, at *3 (S.D.N.Y. Dec. 9, 2015) (noting "the broad language of § 1202(c), which encompasses "information conveyed in connection with copies of a work.")

Defendants rely on cases in which there was no reasonable inference of infringing intent as the defendants had no interest in infringement.  *Reiner v. Nishimori*, 2017 WL 1545589, at *5 (M.D. Tenn. Apr. 28, 2017) (an art student who removed visible CMI for aesthetic reasons when his teacher assigned him the task of designing a mock advertisement using the plaintiff's image could not be found to have intended to conceal his infringing use in a classroom project that was never intended to be made public); *Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 927 (6th Cir. 2003) (defendant advertisers who cut out CMI when using poster for a film set did not intend to remove CMI to conceal infringement because they got the poser from a prop house whose products were presumably cleared for the purpose and they consistently got licenses when using work not from a prop house).

They also rely on several cases where CMI was automatically deleted.  *Stevens v. Corelogic, Inc*., 194 F. Supp. 3d 1046, 1052 (S.D. Cal. 2016) (when real estate agent uploaded house photographs provided by photographers , defendant software developer whose uploading

program would have automatically deleted metadata CMI did not intend to conceal infringement because developer did not upload the images and there was no evidence that they contained CMI); *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999) (developer of web crawler that indexed images without capturing copyright notice adjacent to image did not intend removal).

Finally, they rely on a case where there was no evidence that the work contained CMI when the defendant received it. *Photographic Illustrators Corp. v. Orgill, Inc.*, 118 F. Supp. 3d 398, 408 (D. Mass. 2015) (plaintiffs gave work with CMI to non-party who gave it to defendant with no evidence as to which recipient removed CMI).

### 2.      Application Of Law To Fact

Defendants' motion does not dispute that MGP's credit "Jeffrey Gundlach *Michael Grecco for Barron's*" is CMI. Their argument is that MGP cannot come forward with any evidence for trial on which a jury could find that they had either "knowledge or reason to know" of the existence of that CMI on *Barron's* website. *Memo* at 14. However, none of the facts on which they rest their argument are uncontested.

First, they argue that Wolinsky could not have knowledge of the CMI because "the CMI sits behind a paywall" at *Barron's*. No competent evidence supports that allegation. Moreover, the premise is demonstrably mistaken, illustrating the pitfalls of expert testimony by counsel. *See* response to defendants' Statement of Facts ¶ 48. Moreover, Wolinsky admitted that he did "sometimes" read *Barron's* at the relevant time period, and he did not recall whether or not he read the *Barron's* article on Gundlach in 2011, which permits a jury inference that he did. *Id.* at ¶51. Indeed, it would be hard to for a jury to reach any other conclusion considering the evidence set forth in MGP's counter-statement. *Id.* at ¶ 35.

Defendants argue that they cannot be liable for republishing without the CMI *even if* they downloaded the image from *Barron's* because "the image and the file name can be downloaded directly from Google's image search page or from Barron's server, without ever seeing the alleged CMI…" is meritless. *Memo* at 14.  If the image was downloaded from *Barron's* it is irrelevant if it can also be  downloaded from Google instead (of which there is no evidence at the relevant time period). Referring to response to defendants' Statement of Facts ¶ 35, numerous facts could lead a jury to conclude that VW took the image from the *Barron's* website.

Defendants' theory that they could have circumvented exposure to CMI on the *Barron's* website by stealing the image directly from the WSJ server lacks merit.  While different elements displayed together on a webpage, such as the Gundlach photo in *Barron's* "King of Bonds" webpage, are stored at locations on a server separate from other elements such as text, a jury *could* find that Valuewalk probably got to the image through *Barron's* webpage, which Valuewalk referenced in its own Gundlach article, and where the image was publicly displayed. A jury could find that Valuewalk probably did not find some extraordinary route directly to the server location of the image the address of which they would have to have somehow discovered other than by clicking on the image displayed on the website.  The defense theory posits strenuous effort to avoid exposure to CMI the existence of which could not be known without viewing the webpage, and no record evidence supports it.  *See* response to defendants' Statement of Facts ¶¶ 41-43.

Finally, defendants argue that, if they did remove the CMI, no evidence supports an intention to do so to conceal infringement.  However, none of their authorities apply.  In our case, lack of an interest in infringement would not preclude a jury finding that defendants intended to remove the CMI.  In fact, VW was a serial infringer, constantly beset by copyright infringement claims, and it had a keen interest in avoiding detection.  Obviously, a jury could not

be compelled to a defense verdict due to CMI removal through an unintended automatic process, nor could it be compelled to find fatal uncertainty as to whether CMI was actually removed by VW.

Our case presents a genuine question of fact where a great deal of evidence supports a finding that defendants did remove CMI to avoid detection of infringement.  *See* response to defendants' Statement of Facts ¶¶ 34-37.

## IV.    CONCLUSION

The motion should be denied..

Date:  July 24, 2017

**SPECTOR GADON & ROSEN, P.C.**

By: s/ *Bruce Bellingham*
Bruce Bellingham, Esquire
(215) 241-8916 / FAX- (215) 531-9115
bBellingham@lawsgr.com
David B. Picker, Esquire
dpicker@lawsgr.com
1635 Market Street – 7th Floor
Philadelphia, PA  19103
*Attorneys for Michael Grecco Productions, Inc.*