**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC., | CIVIL ACTION NO. 1:16-cv-06171-GHW |
| *Plaintiff*, |  |
| v. |  |
| VALUEWALK, LLC and JACOB O. WOLINSKY |  |
| *Defendants.* |  |

**PLAINTIFF'S COUNTER-STATEMENT TO DEFENDANTS' RULE 56.1**
**STATEMENT OF UNDISPUTED FACTS**

Plaintiff, Michael Grecco Productions ("MGP") submits this counter-statement in

opposition to Defendants Valuewalk, LLC ("Valuewalk") and Jacob O. Wolinsky ("Wolinsky"

and collectively, "Defendants' ") Rule 56.1 statement.

1.      Valuewalk, LLC ("Valuewalk") is a limited liability company, incorporated in

New Jersey.  (Declaration of Jacob O. Wolinsky, dated June 13, 2017, at ¶ 2 (hereinafter

"Wolinsky Decl.").)

**Response:**  Admitted.

2.      Jacob O. Wolinsky ("Wolinsky") is the sole member and owner of Valuewalk,

LLC, and serves as its Chief Executive Officer ("CEO").  (Wolinsky Decl., at ¶ 3; Declaration

of John H. Ray, III, dated June 13, 2017, Ex. 1, at 25:20-26:1, 30:7-9 (Valuewalk Corp. Dep.)

(hereinafter "Ray Decl.").)

**Response:**  Admitted.

3.     Valuewalk owns www.valuewalk.com, which is a financial information and news website that publishes articles on topics relevant to financial investors.  (Wolinsky Decl., at ¶ 4; Ray Decl., Ex. 1, at 18:1-5 (Valuewalk Corp. Dep.).)

**Response:**  Admitted.

4.     The content on www.valuewalk.com is almost entirely written journalistic content concerning financial information and news.  (Wolinsky Decl., at ¶ 5.)

**Response:**  Denied.

- The alleged fact is not material.

- No record evidence is referenced.

- All documentary evidence in the record shows that Valuewalk.com relied heavily on photographs and graphics in presenting its content as a draw to visitors.  *See* Exh. 2; Exh. 3; Exh. 4; *see also* Exh. 1, Wolinsky Dep. at 236:8-238:15 (Wolinsky did not know what the Valuewalk website looked like).

- Valuewalk obstructed discovery of the content of its website at the relevant times by blocking access to site captures archived by the Internet Archive's Wayback Machine and it allegedly destroyed evidence of the infringing works.  It refused to restore access by Plaintiff to the Internet Archive's screen captures even when ordered to do so by the Court without any evidentiary showing that it made any attempt to comply with the order.  It cannot now be heard to argue that, if it had not obstructed discovery, the blocked evidence would have showed that the site consisted "almost entirely" of text not images.

5.     While www.valuewalk.com includes a design element, and the articles include pictures or images, Valuewalk markets and relies upon the written content and exclusively generates interest from readers, subscribers and viewers based upon the written journalistic

content concerning financial information and news on the website.  (Id., at ¶ 6; Ray Decl., Ex. 1, at 236:22-237:17 (Valuewalk Corp. Dep.) ("Photos were never really a big concern of ours …. People want to know about the content.")

**Response:**  Denied.

- *See* response to ¶ 4 above.

- When a contractor opined that pictures were unimportant, Wolinsky replied that "ppl like attractive pic – its hot chick gets more eyeballs but those are already in plugin."   See Exh. 5.

- Valuewalk gave written instructions to writers requiring them to attach "media" (photographs and graphics) to every article.  See Exh. 1, Wolinsky Dep. at 110:1-111:3; Exh. 19, instructions on attaching media ("If you can't find images that are suitable for the article, you can download it from Google Images and then upload in WordPress Media…")

- Sometimes appropriate images were already in the database but, if not, writers were expected to download images from the internet.  Wolinsky Dep at 111:23-112:4.

- Though the instructions directed writers to download from Google Images, Wolinsky admitted knowing that some of the photographs in Google Images were copyright protected.  Id. at 114:8-12.

- The instructions did not advise writers downloading images from Google Images to take any precautions against copyright infringement.  See Exh. 6.

6.   Valuewalk does not market or rely upon any infringed pictures or images as part of its marketing or business strategy.  (Id., at ¶ 7.)

**Response:**  Denied.

- The alleged fact is not material.

- The statement is ambiguous.  The only "marketing or business strategy" shown in the record is that Valuewalk published its website in order to earn advertising revenue.  Exh. 1, Wolinsky Dep. 44:14 (ads are the site's major source of revenue).

- Wolinsky testified that Valuewalk attempted to illustrate most articles with some form of artwork because Wolinsky thought graphics enhanced search engine optimization. Exh. 1, Wolinsky Dep. at 120:2-18.

7.    Valuewalk has no knowledge of any investor or other person who visits www.valuewalk.com for any infringed pictures or images.  (Id., at ¶ 8.)

**Response:**  Denied.

- The alleged fact is not material.

- If the intended meaning is that readers of valuewalk.com do not actively favor content that displays infringed as against licensed images, there is no record evidence on the subject and the allegation is frivolous.

8.    Infringed pictures or images to do not add any value to the services provided by www.valuewalk.com.  (Id., at ¶ 9.)

**Response:**  Denied.  *See* Response to ¶ 5.

9.    Valuewalk cannot determine any income or other value or benefit generated by any alleged infringed picture or image on the website, including the alleged Gundlach image in this action.  (Id., at ¶ 10.)

**Response:**  Denied.

- The allegation is not material to the motion for summary judgment.

- Ads are the site's major source of revenue. *See* Exh. 1, Wolinsky Dep. 44:14; Exh. 7, Answer to Plaintiff's 3rd RFA No. 16.

- Valuewalk published the Jeffrey Gundlach Resource Page with the infringing image to generate advertising revenue from reader page views on Valuewalk.com.  See Exh. 7, Answer to Plaintiff's 3rd RFA Nos. 17 and 19.

- Valuewalk received revenue from the web page containing the Gundlach Image. See Exhs. 12 and 13, page view register (2012 and 2015 page had total of 4,573 views); Exh. 1, Wolinsky Dep. at 364:20-366:3 (Wolinsky could state no factual basis for Valuewalk's denial of a request to admit that Valuewalk.com earned revenue from the display of advertisements to readers who visited the Gundlach Resource Page).

- *See also* responses to ¶ 5 above.

10.    As the CEO, Wolinsky is responsible for the administrative and financial affairs of Valuewalk and www.valuwalk.com.  (Id., at ¶ 11; Ray Decl. Ex. 1, at 33:2-9 (Valuewalk Corp. Dep.).)

**Response:**  Admitted.

11.    Although Wolinsky has been nominally referred to as the "Editor in Chief," he does not regularly exercise direct supervisory responsibility over the content at Valuewalk. (Wolinsky Decl., at ¶ 12; Ray Decl., Ex 1, at 29:21-30:5, 30:10-32:10, 36:13-24, 256:21-257:19 (Valuewalk Corp. Dep.); Ex. 2, at 338:1-339:6 (Valuewalk Corp. Dep. II).)

**Response:**  Denied.

- Wolinsky holds the title "Editor in Chief" of Valuewalk.com.  See Exh. 8, Valuewalk.com website page; Exh. 7, Answer to Plaintiff's 3rd RFA, No. 1; Exh. 1, Wolinsky Dep. at 338:1-339:6 ("I have used that title.")

- Wolinsky may delegate responsibility or seek advice, but has no superior or supervisor with greater authority than he at Valuewalk.  See Exh. 1, Wolinsky Dep. 329:23-330:14.

- The other contributors to Valuewalk.com are contract employees.  Id. at 45:2-7; 348:11-13.   They are paid piece-rate by the word or by the article.  Id. 44:15-20.

- Wolinsky gets involved in editorial processes.  Id. at 255:2-16 ("if I see there's an issue" Wolinsky gets involved in editorial work such as selecting and substituting photos); *also* 30:21- 23; 267:20-22; 124:5-11.

- Wolinsky admitted that, as Editor-in-Chief, "I could technically have final say over any material – any article we publish."  Exh. 1, Wolinsky Dep. at 30:12-14.   No person at Valuewalk.com has authority to countermand Wolinsky's editorial decisions.  Id. at 38:13-21; 331:13-18; 332:1-13; 336:14-337:10; 343:4-344:2; 346:6-12; 347:1-19 .   He admitted broad decision-making power to determine what content was published on Valuewalk.com.  Id. at 330:5-331:8, esp. 331:7-8.  Valuewalk.com has no publisher apart from Wolinsky.  Id. at 339:7-21.  While the webmaster makes some independent decisions primarily of a technical nature, Wolinsky countermanded his decision to remove an infringing work in response to a victim's demand because "at the end of the day I make the final decision." Id. at 203:11-20.

- *See also* response to ¶ 13 below.

12.   www.valuewalk.com's articles are created by independent contractor writers paid by Valuewalk for their content.  (Wolinsky Decl., at ¶ 13; Ray Decl., Ex. 1, at 44:15-20, 45:2-7 (Valuewalk Corp. Dep.).)

**Response:**  Denied as stated.

- The alleged fact is not material.

- It is admitted that all of valuewalk.com's writers are independent contractors and that they create articles at the direction and subject to the decisions of valuewalk.com's Editor in Chief, Wolinsky.

- Wolinsky, not his piece-rate contractors, controlled the website. *See* response to ¶¶ 11 and 13.

13.     The independent contractors have independent authority over the content they create, including any pictures or images they may upload to www.valuewalk.com.  (Wolinsky Decl., at ¶ 14; Ray Decl., Ex. 1, at 218:7-11 (Valuewalk Corp. Dep.).)

**Response:**  Denied.

- Wolinsky required his piece-rate contract writers to select and upload graphic "media" from the company's server or from the internet to accompany every article submitted. *See* Response to ¶ 5.  Compliance with those orders did not give piece-rate contractors "independent authority over the content they create" in any sense relevant to an infringement claim.  While Wolinsky delegated assignments, like every editor, he exercised all relevant "authority" over valuewalk.com.  *See* Response to ¶ 10.

14.     Valuewalk identified the independent contractors who were responsible for posting the Jeffrey Gundlach Resource Page on the website, and any pictures or images associated with that page.  (Wolinsky Decl., at ¶ 15; Ray Decl. Ex. 1, at 76:2-6 (Valuewalk Corp. Dep.))

**Response:**  Denied.

- The alleged fact is not material.  Absent a valid DMCA safe harbor defense, Valuewalk is, as a matter of law, "responsible" for the display of infringing images on its website.  Wolinsky is also responsible unless he had nothing to do with the operation of

valuewalk.com.   While a Valuewalk contractor could also be jointly and severally liable with the defendants, they did not plead any contribution claim against any contractor.

- At some time prior to June 2, 2011 – shortly after the publication of the Gundlach cover story in *Barron's* on February 21, 2011 – Wolinsky discussed creating a "guru page" on Gundlach with an assistant at Gundlach's firm who sent Wolinsky a photograph of Gundlach "for his eventual guru profile" in Valuewalk.   See Exh. 1, Wolinsky Dep. 75:17-76:7.

- Wolinsky claims he gave an "outside" contractor working through a freelance website "a list of names of investors that we wanted some resource pages on" in early 2012. See Exh. 1, Wolinsky Dep. at 348:10-18; 83:12-15; 81:8-10.  On March 4, 2012, Wolinsky emailed text and image for a profile on Gundlach to a regular Valuewalk contract employee named Sidra.  Wolinsky directed her to format the article as a "page" for enduring website content.  Id. at 76:11- 78:9; Exh. 9, email from Wolinsky to "Sidra."

- MGP sought production of all documents relating to Valuewalk's acquisition of the Gundlach Image and any communications relating to it other than with counsel.  Defendants stated that no such documents existed.  *See* Exh. 10, Defendants' Response to Plaintiff's First Request for Production of Documents at ¶¶ 2 and 3.

- The March 4, 2012 email from Wolinsky directing Sidra to format the Gundlach article as a "page" contained an image of Gundlach sent from Gundlach's firm.  Exh. 9. Valuewalk published its article on Gundlach no later than March 5, 2012.  Exh. 11, page view register for the 2012 publication.  However, for its published article, Valuewalk substituted a copy of MGP's image of Gundlach that it licensed to *Barron's* in place of the image supplied by Gundlach's firm.

- There is no evidence that the contractor Sidra had anything to do with that infringing substitution.   Defendants admitted that Sidra is located in Pakistan.  *See* Exh. 12, Defendant's Responses to First Interrogatories (mis-titled "Plaintiff's Responses") at ¶ 1.  A jury could find it more likely than not that Wolinsky, rather than his Pakistani contractor, substituted the Gundlach Image from *Barron's* because: (1) he is also in New York and *Barron's* is his competitor whose recent cover story on Gundlach he is likely to have been aware of; (2) as Editor-in-Chief and sole owner of Valuewalk, he had an incentive to substitute a better image while his piece-rate contractor had no incentive to create extra work for herself, *gratis*, by changing something her employer apparently wanted; (3) Wolinsky personally conceived a "guru page" on Gundlach in the spring of 2011 and was the active force behind the creation of the Gundlach Resource Page; (4) Defendants allegedly destroyed all electronic records of both the infringing publications and the server copy of the stolen image, including metadata that may have identified the person who uploaded the infringing image; and (5) defendants failed to plead a cross-claim for contribution against the contractor they now seek to blame for the infringement.

15.     Valuewalk provides legal and administrative services to the independent contractors, including information regarding copyrights and compliance with intellectual property law, and encourages them to consult its attorneys.  (Wolinsky Decl., at ¶ 16; Ray Decl., Ex. 1, at 103:24-104:6, 112:5-113:9, 115:4-116:4, 203:11-20 (Valuewalk Corp. Dep.).)

**Response:**  Denied.  The record citations do not support the allegation.  *See* Wolinsky Dep. at 103:24-104:6 (defendants produced numerous emails with counsel on infringement claims, but none seeking pre-infringement advice, because all those communications were by phone);  112:5-113:9 (admitting that contractors were expected to download images from the

internet, and that Valuewalk's directions to contractors on attaching media to stories contains no

reference to avoiding infringement, and that all documents on uploading media were produced,

but stating that another unidentified document contains directions to avoid infringement [JW

later said he did not remember if such other document about attaching media  existed, 119:5-9]);

115:4-116:4 (Wolinsky "may have" disseminated Valuewalk's instructions to contractors on

attaching media to stories in which copyright protection is not mentioned); 203:11-20

(concludes discussion started on 201 stating that Wolinsky countermanded decision of

Valuewalk's webmaster's to take down a chart on the demand of its author because "at the end

of the day I make the final decision" and "I wanted to clarify with my lawyer first.")

      16.    Valuewalk encouraged independent contractors to find commercial use allowed

or free license images that are available for public use on search engines that allow commercial

use- or free license-restricted searches like Google.com.  (Wolinsky Decl., at ¶ 17; Ray Decl.,

Ex. 1, at 111:10-17, 225:15-23, 229:4-17, 233:1-11 (Valuewalk Corp. Dep.).)

      **Response:**  Denied.

•     In discovery Plaintiff requested all documents evidencing any instructions or

policies relating to license acquisitions and copyright infringement.  See Exh. 10, Defendant's

Response to Plaintiff's 1st Request for Documents at ¶¶ 23-24.  Valuewalk did not produce any

document advising its contractors to avoid copyright infringement of photographs or anything

else prior to May 2016, after the infringements at issue here.  While Wolinsky claimed that such

documents existed, and offered to supplement Valuewalk's production, he did not do so.  *See*

Wolinsky Dep. at 235:4-12.  Valuewalk did nothing to discourage infringement or protect rights

owners until May of 2016.

- The record citations do not support the allegation.  *See* Wolinsky Dep. at 111:10-17 (writers were instructed to use images taken from Google Images if there was not already an image "in the data base"; instructions did not reference avoiding infringement); 225:15-23 (discussing instructions to contractors on attaching media from Google Images to stories, and Wolinsky's comment to counsel on March 9, 2015 that he thought an infringed photo [taken from *Barron's*] was from the "public domain" because it came from Google Images [see Exh. 13 at 10 of 18], Wolinsky eventually admitted that he did *not* believe that the images contractors were instructed to take from Google Images were in the public domain ["I don't think so, but I'm not sure." Id. 226:21]); 229:4-17 (Wolinsky testified he believed commercial use was allowed for photos on Google Images after just admitting he did not believe Google Images photos were in the public domain, and when Valuewalk's directions to contractors on attaching media did not advise contractors to select documents for which a commercial use license was granted); 233:1-11 (after admitting that Valuewalk first adopted a consistent policy of avoiding photo infringements in or about June of 2016, *id.* at 230:1-2 and 232:5-11, Wolinsky claims to have earlier communicated emails advising contractors not to use work licensed for commercial use and offered to find emails supporting that claim [which were never produced]).

- Wolinsky admitted that, when Valuewalk stole MGP's work in 2012, Valuewalk had no budget for license acquisition and no substantial expenditures, if any, for image licensing.  Id. 105:1-9.  It had no contracts with photo stock agencies.  Id. at 106:20-21. Valuewalk produced a *single* authorization to use an image during the entire period 2012-2016. Id. 106:10-17.  The only internal rights clearance procedure Wolinsky could state was consultation with legal counsel.  Id. 102:3-9.  While every one of the numerous emails with counsel on infringement produced by defendants concerned after-the-fact responses to

infringement claims, Wolinsky claimed he sought pre-infringement advice – unlike post-infringement advice – only by telephone.  Id. 103:3-23.  No document reflects any involvement by contractors in these communications with counsel.

- The instructions that Valuewalk gave to its contract writers on attaching "media" to articles did not advise writers downloading images from Google Images to take any precautions against copyright infringement.  See Exh. 6.

- That policy *change* in 2016 occurred after Valuewalk was sued by photographer Brad Trent (for stealing an image from *Barron's*).  *See* Exh. 1, Wolinsky Dep. at 216:7-217:11.

- Wolinsky communicated to contractors his contempt for the Copyright Act and his hostility to victims of Valuewalk's infringements.  For example, when photographer Brad Trent contacted Valuewalk in March 2015 offering a retroactive license for its infringing use of his photograph stolen from *Barron's*, Wolinsky instructed Valuewalk's contract webmaster "[d]on't respond to this guy but can u just check that all the images are removed i think i did just want to make sure he cant claim anything."  Exh. 13 [36], 2 of 18.  That suggests an intent to spoliate evidence as Wolinsky wrote his lawyer that Trent's name "was nowhere on the image either in the file data or on the picture", indicating that Wolinsky understood the evidentiary value of image file metadata which he instructed the webmaster to remove.  Id., 7 of 18.  Wolinsky added three contractors to the email chain.  Id. 4 of 18.  One of them replied: "This memon [moron] is still stalking us."  Id. 16 of 18.  This rancorous response came despite the opinion of Valuewalk's own lawyer that "[t]his is of course problematic.  It is not fair use to use images of another without authorization if the image is not in the public domain."  Id. 9 of 18.  When Trent persisted, counsel advised Wolinsky: "just ignore for now *as always*."  Id. 17 of 18 (emphasis added). Wolinsky showed his animus toward copyright by responding: "LOL

so u dont think hes being serious I guess" but he enquired about liability insurance, admitting he "would  feel better w/ some coverage."  Id. 18 of 18.  Trent did, in fact, sue Valuewalk.  Id. at 267:6-12.

- Despite his own lawyer's advice in 2015 that that Valuewalk's use of Trent's work was not fair use, Wolinsky emailed a contractor in May 2016 that "Laws in America are crazy.  We accidentally – not you – used pic once without any name or data on it and the guy is crazy and stalking me."  Id. 265:12-17.  In announcing Valuewalk's new policy in an email to all contractors on June 2, 2016, Wolinsky wrote: "Update.  Everyone, this is a very, very dumb law, but we need to comply with it."  Id. at 269:15-16.  Valuewalk made no remotely analogous communication to its contractors to avoid infringement during the period relevant to MGP's action.

17.    Valuewalk has never encouraged or even suggested that any independent contractor unlawfully use copyrighted images.  (Wolinsky Decl., at ¶ 18; Ray Decl., Ex. 1, at 231:18-232:4 (Valuewalk Corp. Dep.).)

**Response:**  Denied.

- Virtually every image fixed in a tangible form in the United States after 1978 is copyrighted other than government works.

- By directing contractors to attach to stories media taken from Google Images without any precautions against infringement, Valuewalk encouraged them to unlawfully copy protected images.  Wolinsky claimed always to have discouraged infringement, but not an iota of documentary evidence supports the existence of any such policy prior to May, 2016, and he

admitted that Valuewalk adopted a *changed* policy, in May or June of 2016.  *See* Exh. 1, Wolinsky Dep. at 230:1-3; 232:9-10; 261:11-16.[1]

18.     Decisions regarding copyrights are made by Valuewalk's attorneys.  (Wolinsky Decl., at ¶ 19; Ray Decl., Ex. 1, at 218:7-11 (Valuewalk Corp. Dep.); Ex. 2, at 342:9-23 (Valuewalk Corp. Dep. II).)

**Response:**  Denied.

•      The alleged fact is not material.  Advice of counsel is not a copyright defense.

•      The record citations do not support the allegation.  *See* Exh. 1, Wolinsky Dep. at 218:7-11 (contractor forwarded Trent's demand to Wolinsky stating "I assume you saw this" because he was the owner of Valuewalk and he consults an attorney about legal issues); 342:9-23 (Asked if there is any limit on his editorial control "*other than your own choices,*" Wolinsky stated "I give controls over and that my attorneys could – could override anything").

•      Valuewalk was a serial infringer.  It routinely republished slightly altered proprietary investor reports created by banks and investment firms as a service for their clients, and analyses by research firms intended for subscribers.  While some authors permit those republications, Valuewalk.com routinely stole unauthorized copies fraudulently procured from sources who leaked them to Valuewalk without the consent of the copyright owners.  *Id.* at 121- 228; deposition Exhs. 14-36 (review of 21 infringement claims against Valuewalk, which is a sample).

---

[1] The first reference to avoiding infringement in the entire record was in an October 2015 email – after the relevant time period and after Brad Trent's demands – about a photo republished with "Tass/Barcroft" copyright notice, but that was in a personal exchange with the contractor that was not shared generally as a matter of policy. *See* Exh. 1, Wolinsky Dep. at 254:2-10.

- As a serial infringer the frequently received cease and desist demands, Valuewalk regularly consulted legal counsel about claims against it. However, not a single document in the record shows that Wolinsky *ever* consulted counsel for copyright advice *prior* to an infringing use. *See* Wolinsky Dep. at 103:24-104:6 (defendants produced numerous emails with counsel on infringement claims, but none seeking pre-infringement advice, because all those communications were by phone).

19. Wolinsky did not maintain supervisory control or final authority over copyrighted material used by independent contractors at www.valuewalk.com. (Wolinsky Decl., at ¶ 20; Ray Decl., Ex. 1, at 102:3-104:6; 202:22-23 (Valuewalk Corp. Dep.).)

**Response:** Denied. The alleged fact is not material. The relevant issue is whether Wolinsky maintained supervisory control and final authority over valuewalk.com. See responses to paragraphs 10-13 above.

20. www.valuwalk.com has over 100,000 images posted on its website in connection with articles, resource pages and other content on the website. (Wolinsky Decl., at ¶ 21.)

**Response:** MGP can neither admit nor deny the allegation as no record evidence exists on the fact. MGP does admit that Valuewalk makes lavish use of photographs and other graphics. Virtually every article is illustrated.

21. Valuewalk has received fewer than 5 copyright infringement claims regarding the over 100,000 images. (Id., at ¶ 22; Ray Decl., Ex. 1, at 99:21-100:1 (Valuewalk Corp. Dep.).)

**Response:** Denied. The alleged fact is not material. The record citations do not support the allegation. *See* Exh. 1, Wolinsky Dep. at 99:21-100:1 (asked if Valuewalk had "numerous copyright infringement claims lodged against it in the period March 2012 through

March 2015", Wolinsky answered "I don't think so."  He was then confronted with 21

copyright infringement claims lodged against Valuewalk and one infringement claim lodged by

Valuewalk against a competitor.   Id. at 121- 228; deposition Exhs. 14-36.

22.     Valuewalk has <u>never</u> been found to have infringed a copyright of any kind, by

any authority in any proceeding.  (Wolinsky Decl., at ¶ 23.)

   **Response:**  MGP can neither admit nor deny the allegation as no record evidence exists

on the fact.  The alleged fact is not material.

23.     Wolinsky had no knowledge of the use of any image of Jeffrey Gundlach by

Michael Grecco or Michael Grecco Productions, Inc. that may have been subject to any

copyright on the Jeffry Gundlach Resource Page ("Resource Page") on www.valuewalk.com.

(<u>Id.</u>, at ¶ 24.)

  **Response:**  MGP denies the allegation because it is incomprehensible.

•       If the intent is to allege that Wolinsky did not know that MGP's Gundlach Image

was protected by the Copyright Act, the statement is confused as virtually every image fixed in

a tangible form after 1978 is protected by copyright other than government works.

•       As early as February 2012, Wolinsky received an infringement claim from

photographer Joshua Lanzara about which he sought legal advice.  *See* Exh. 1, Wolinsky Dep.

at 122: 10-124:22; Exh.21, February 27, 2012 email chain with attorney Effie Gang about

Lanzara.   Wolinsky told counsel that "Ill remove the image im just scared he might realize and

then take action."  Id. at 2 of 3.    He knew, or should have known, that unlicensed use of

images is infringement.  He also advised counsel that the photographer "has no proof this email

didnt go to my spam folder."  Id.  Asked why he said there is no proof that the message did not

go to his spam folder when it clearly did not, Wolinsky said the he thought "he legally had to

inform me first, so this wouldn't be a legal notice" if it went to his spam folder. Id. at 129:22-24.    Asked if he meant he was prepared to give untruthful testimony in a legal matter, Wolinsky said the suggestion was offensive. *Id.* at 130:5-6.

24.    In 2011, Wolinsky obtained a license for the use of an image of Jeffrey Gundlach directly from his assistant, Loren Fleckenstein.  (Id., at ¶ 25: Ray Decl., Ex. 1, at 75:2-7, 75:17-76:3 (Valuewalk Corp. Dep.).)

**Response:**  Admitted.

25.    Wolinsky provided the image to the independent contractors who were creating the Resource Page for use on www.valuewalk.com.  (Wolinsky Decl., at ¶ 26: Ray Decl., Ex. 1, at 79:11-22 (Valuewalk Corp. Dep.).)

**Response:**  Denied.  The evidence shows only that Wolinsky sent the image to the contractor Sidra.  Wolinsky denied having any independent recollection of getting the image from Loren Fleckstein.  *See* Exh. 1, Wolinsky Dep. at 74:8-76:3.

26.    Wolinsky never encouraged, counseled or in any other way suggested that any independent contractor use any other image other than the Gundlach image for which he had obtained a license directly from Mr. Gundlach.  (Wolinsky Decl., at ¶ 27; Ray Decl., Ex. 1, at 85:10-86:2 (Valuewalk Corp. Dep.).)

**Response:**  Denied.  The record citation does not support the allegation.  When the difference between the licensed image he sent to Sidra and the infringing image that Valuewalk actually published was pointed out to him in his deposition, Wolinsky denied any recollection of the matter.  *See* Exh. 1, Wolinsky Dep. at 85:10-86:2.

27.    Prior to 2016, Wolinsky did not regularly review nor had any reason to review the over 100,000 images posted on www.valuewalk.com.  (Wolinsky Decl., at ¶ 28.)

**Response:**  Denied.  Plaintiff does not know what defendants mean by "regularly review[ing]… over 100,000 images".  The alleged fact is not material.  Further, there is no record evidence on the subject.

28.     Prior to July 12, 2016, Wolinsky did not review the photograph of Jeffrey Gundlach on the Resource Page.  (Id., at ¶ 29; Ray Decl., Ex. 1, at 48:23-49:8 (Valuewalk Corp. Dep.).)

**Response:**  Denied.  The alleged fact is not material.  The record citation does not support the allegation.  *See* Exh. 1, Wolinsky Dep. at 48:23-49:8 (Wolinsky did not recall whether he had looked at the Gundlach Resource Page before the Complaint was filed on August 4, 2016).

29.     According to Valuewalk records, the Resource Page was first published in or about March 2012, including an image of Jeffrey Gundlach that Plaintiff alleges is subject to its copyright (the "alleged Gundlach image").  (Wolinsky Decl., at ¶ 30; see also Compl., at ¶¶ 35, 44.)

**Response:**  Denied.   The Complaint makes no reference to the 2012 publication which was revealed in discovery.  Valuewalk.com published a profile titled "Jeffrey Gundlach Resource Page" in early March, 2012.  *See* Exh. 14, Wayback Machine capture of 2012 Gundlach Resource Page; Exh. 1, Wolinsky Dep. at 389:10-13 ("I think the original resource page was posted in 2012…"); 392:5-12; 84:15-18 (Wolinsky recognized the Wayback Machine capture as the 2012 Gundlach Resource Page publication); Exh. 11, page view register for the 2012 publication with first view on March 5, 2012.

30.     The alleged Gundlach image was never re-published, but was continuously displayed since March 2012.  (Wolinsky Decl., at ¶ 31; Ray Decl., Ex. 1, at 87:6-20, 89:10-16

(Valuewalk Corp. Dep.); see also Compl., at ¶¶ 35, 44.)

**Response:**  Denied.

- The 2012 Gundlach Resource Page article was displayed at the URL address http://www.valuewalk.com/jeffrey-edward-gundlach-resource-page/  and the Gundlach Image for the 2012 article was stored on Valuewalk's server at the URL address http://cdn1.valuewalk.com/wp-content/uploads/2012/03/ BA-AV026_Gundla_G_201102181740101-300x200.jpg.  See Exh. 15, ImageRights Sighting; Declaration of Joe Naylor; Exh. 11, register of page views.

- In March, 2015, Valuewalk published a substantial re-write of the Gundlach Resource Page that again copied MGP's Gundlach Image.  See Exh. 16, 2015 page view; Exh 1, Wolinsky Dep. at 48:18-49:19 (2015 Gundlach Resource Page appeared on the Valuewalk website).  Valuewalk displayed the 2015 page at the different URL address http://www.valuewalk.com/jeffrey-gundlach-resource-page/ and the Gundlach Image for the 2015 article was stored on Valuewalk's server at the different URL address http://valuewalk.com/wp-content/uploads/2012/03/ BA-AV026_Gundla_G_201102181740101-300x200.jpg.  See Exh. 15, ImageRights Sighting; Declaration of Joe Naylor; Exh. 17, 2015 register of page views.

- Valuewalk's own page view records establish that there was one publication which began to be viewed on March 5, 2012 that continued to be viewed through February 2, 2014, followed by a handful of views in June, July, and September 2016, and January 2017 (when Valuewalk refused to produce the electronic record because it had supposedly been destroyed in July 2016).  *See* Exh. 11.   The second publication was first viewed on February 25, 2015 and continued to be viewed through the end of the January 19, 2017 reporting period,

though the image was removed at some time.   *See* Exh. 17.

      31.     Wolinsky did not publish or post the alleged Gundlach image to

www.valuewalk.com.  (Wolinsky Decl., at ¶ 32; Ray Decl., Ex. 1, at 92:13-93:9 (Valuewalk

Corp. Dep.).)

      **Response:**  Denied.  A jury could find that Wolinsky personally substituted the

Gundlach Image for the licensed image he sent to Sidra.  *See* response to ¶ 14.  He certainly

"published" the infringing article.  *See* response to ¶¶ 2, 3, 10-13.

      32.     The alleged Gundlach image was uploaded by a third-party independent

contractor named Sidra.  (Wolinsky Decl., at ¶ 33; Ray Decl., Ex. 1, at 76:2-6 (Valuewalk Corp.

Dep.).)

      **Response:**  Denied.

-     *See* response to ¶ 14.

-     The record citation does not support the allegation.  Exh. 1, Wolinsky Dep. at

76:2-6 (Wolinsky had no recollection of receiving any photo of Gundlach from Fleckstein); also

85:21-24 (Wolinsky has "no clue" why the image of Gundlach provided by Fleckstein was

replaced with MGP's image).

      33.     Wolinsky did not approve or in any way participate in publishing the alleged

Gundlach image to www.valuewalk.com.  (Wolinsky Decl., at ¶ 34; Ray Decl., Ex. 1, at 99:5-15

(Valuewalk Corp. Dep.).)

**Response:**  Denied.

-     *See* response to ¶¶ 2, 3, 10-14.

-     The record citation does not support the allegation.  Exh. 1, Wolinsky Dep. at 99:5-15 (Wolinsky did not know if Valuewalk made any effort to procure a license for its use of the Gundlach Image).

-     Wolinsky denied any recollection of the facts relating to the publication of the Gundlach Image in place of the original image he sent to Sidra.  *See* response to ¶ 32.

34.    Valuewalk has no knowledge of any person who removed any alleged content management information, the alleged "gutter credit" saying "Jeffrey Gundlach *Michael Grecco for Barron's*" in the Barron's article (the "alleged "CMI"), for the alleged Gundlach image. (Wolinsky Decl., at ¶ 35.)

**Response:**  Denied.  See response to ¶ 35 below.

35.    Valuewalk has no knowledge of any person who read the Barron's magazine, "The King of Bonds," article, published February 21, 2011 (the "Barron's article") or had any knowledge of any alleged CMI related to the alleged Gundlach image, prior to July 12, 2016. (Id., at ¶ 36; Ray Decl., Ex. 1, at 79:3-10 (Valuewalk Corp. Dep.).)

**Response:**  Denied.

-     While Wolinsky claims the first draft of the Gundlach Profile Page was written by an unnamed outside contractor, there is no documentary evidence of that allegation.  If it occurred, there is no record of the content of the draft.  *See* response to ¶ 14 above.  The only undisputed evidence is the email that Wolinsky sent to Sidra with the final text of the 2012 profile attached along with a licensed photo of Gundlach.  *Id.*  There is neither evidence nor reason to believe that the Pakistani contractor whom defendants seek to blame had anything to do with the defendants' infringement.  *See* response to ¶ 14. As Valuewalk has emails conveying Wolinsky's draft of the article to Sidra, the absence of corresponding documentary

evidence of an alleged conveyance from the "outside" contractor to Wolinsky presents a question of fact.

- The licensed image used in the *Barron's* article was published with the copyright management information "Michael Grecco for *Barron's*."  *See* Exh. 18, *Barron's* article.

- MGP's original Gundlach Image is in color with a large backdrop rising above the figure.  *See* Exh. 19, Certificate.  *Barron's* published the Gundlach Image in a unique form, cropped and in black and white.  *See* Exh. 18, Barron's article.  Valuewalk republished the image in the same form as in *Barron's*.  *See* Exh. 14, 2012 Valuewalk profile.

- Valuewalk's infringing use was published just 12 months after the *Barron's* article.  There is no evidence of any prior third party infringer at that early date from which Valuewalk could have stolen the image already stripped of its CMI.

- The text of Valuewalk's profile of Gundlach that Wolinsky sent to Sidra – which may or may not have been touched by a second contractor – references the *Barron's* article.  *See* Exh. 14, 2012 Valuewalk profile ("In 2011, he was featured as the 'King of Bonds' in *Barron's*, …")  Wolinsky had personally been planning a Gundlach profile since at least late spring of 2015, and had personally negotiated the article with Gundlach's assistant Loren Fleckstein.  Exh. 1, Wolinsky Dep. at 76:7 ("I guess I did,…").

- Barron's stores the Gundlach Image on its server at URL address: http://si.wsj.net/public/resources/images/BA-AV026_Gundla_G_20110218174010.jpg where it can be found today. *See* Exh. 20, Barron's server image.

- The Gundlach Image was stored on Valuewalk's server at the URL address http://cdn1.valuewalk.com/wp-content/uploads/2012/03/ BA-AV026_Gundla_G_201102181740101-300x200.jpg.  *See* Exh. 15, ImageRights Sighting;

Declaration of Joe Naylor.  A jury could find that the file name in the server URL address that Valuewalk gave to its infringing copy of the Gundlach Image was adopted from its source at *Barron's* due to the similarity that is otherwise inexplicable.

- Knowledge of the source from which Valuewalk stole the Gundlach image is within its control.  There is evidence from the same time period that, if it wanted him to do so, Valuewalk's "content manager" can identify the source of images stored on its server.  Exh. 21, at 1 of 3 (Wolinsky told Lanzara lawyer that "my content manager had proof of where I got the picture…")  If Valuewalk could identify the source of one image copied in 2012, a jury could conclude it could identify the source of the infringing use of the Gundlach Image, also in 2012, if it wanted to.

- A jury could draw an adverse inference from Valuewalk's spoliation.  *See* additional facts below at ¶¶ 55-56.

- There is evidence that the alleged destruction of evidence was willful.  In addition to the evidence that Wolinsky told his Lanzara lawyer that Valuewalk could identify the source of images on its server if it wanted to, he also wrote his subsequent lawyer that Brad Trent's name "was nowhere on the image either *in the file data* or on the picture".  Exh. 21, at 7 of 18 (emphasis added).  Wolinsky understood the evidentiary value of image metadata (which he instructed the webmaster to remove in Trent's case).  Wolinsky's suggestion to his Lanzara lawyer that Lanzara "has no proof this email didnt go to my spam folder", together with the admission that Wolinsky thought such notice was a legal requirement, could support an inference that Wolinsky proposed giving false testimony in a legal proceeding.  Finally, there is evidence that the alleged destruction of the electronic evidence in our case is untruthful as the

record of page views indicates that the 2012 article – allegedly destroyed in July 2016 – was accessed as recently as January 2017.

36.     Wolinsky did not read the Barron's article, or have any knowledge of the alleged CMI related to the alleged Gundlach image, prior to July 12, 2016.  (Wolinsky Decl., at ¶ 37; Ray Decl., Ex. 1, at 46:19-22 (Valuewalk Corp. Dep.).)

**Response:**  Denied.

•     The record citation does not support the allegation.   Exh. 1, Wolinsky Dep. at 46:19-22 (Wolinsky did not recall whether he read the Barron's article).

•     *See* response to ¶ 37 above.

37.     The alleged Gundlach image has been available on many other websites on the Internet.  (Wolinsky Decl., at ¶ 38; Ray Decl., Ex. 1, at 51:17-52:17 (Valuewalk Corp. Dep.).)

**Response:**  Denied as stated.

•     While other infringers have stolen the Gundlach Image, there is no evidence that any third party infringer stole it before Valuewalk.

•     The record citation does not support the allegation.  Exh. 1, Wolinsky Dep. at 51:17-52:17 (defendants' Answer denied that Valuewalk could have identified the copyright owner for purposes of procuring a license on the frivolous grounds that "this photo is on many other places on the internet").

38.     Google.com does not publish independent CMI (that is either not present on the image or embedded in the image file, like the alleged CMI in this case) in connection with image search results.  (Wolinsky Decl., at ¶ 39; Ray Decl., Ex. 6 (Screenshot of Google search result for the Gundlach image).)

**Response:**  Denied.  The statement that "Google.com does not publish independent CMI" has no intelligible meaning.  The CMI at issue here is the notice "Jeffrey Gundlach *Michael Grecco for Barron's*" printed in conjunction with the image in the *Barron's* article. *See* Exh. 18, Barron's article.

39.     Google.com does not indicate whether a picture or image is subject to copyright or whether it has associated independent CMI.  (Wolinsky Decl., at ¶ 40.)

**Response:**  Denied.  The statement is confused as virtually every picture or image fixed in a tangible form since 1978 in the United States is "subject to copyright" other than government works.

40.     Google.com does not include independent CMI in connection with image search results.  (<u>Id.</u>, at ¶ 41.)

**Response:**  Denied.  See response to ¶ 39 above.

41.     Barron's does not include CMI information in its publicly available picture archives or servers.  (<u>Id.</u>, at ¶ 42.)

**Response:**  Denied.  The CMI at issue is plainly displayed in *Barron's* archive.  See Exh. 18, Barron's article. While no text is included in the server location where photographs are stored, server locations of elements displayed on websites are typically accessed through the webistes on which the elements are displayed.  In any event, defendants have no competent evidence admissible at trial on their novel theory.  They would have to admit that Valuewalk accessed the Gundlach image through the *Barron's* server without viewing the *Barron's* webpage. Even then, the implausibility of the admission would defeat summary judgment.

42.     The alleged Gundlach image and its file name are publicly accessible and downloadable at <u>https://si.wsj.net/public/resources/images/BA-</u>

AV026_Gundla_G_20110218174010.jpg, without accessing the Barron's article or the alleged

CMI contained in the article.  (Id., at ¶ 43; see also Ray Decl., Ex. 5, at 1 (Screenshot of the

alleged Gundlach image on Barron's servers).)

　　　　**Response:**  Denied as stated.  The image is publicly displayed at the URL address on the

Wall Street Journal's website server.  The website is the route to the server storage address of

the image stored on a server.  The server image can be accessed directly by one who knows its

URL address, the only publicly-available way to locate the server address is by clicking on the

archived web page where the image is displayed with its CMI. *See* Exh. 15, ImageRights

Sighting; Declaration of Joe Naylor.

　　　　43.　　An image from a Google.com search result, even if linked to Barron's website,

does not identify CMI information.  (Wolinsky Decl., at ¶ 44.)

　　　　**Response:**  Denied.  A search that linked to Barron's "website" would always display

the CMI information.  *See* Exh. 18, Barron's article.

　　　　44.　　Downloading the alleged Gundlach image from either Google.com or from

Barron's, does not provide any embedded or other CMI.  (Id., at ¶ 45.)

　　　　**Response:**   Admitted.  The CMI at issue here is the notice "Jeffrey Gundlach *Michael

Grecco for Barron's*" printed with the image in the *Barron's* article.  *See* Exh. 18, Barron's

article.

　　　　45.　　Information concerning Jeffrey Gundlach is available on Wikipedia.com,

including a reference to the Barron's article.  (Id., at ¶ 46.)

　　　　**Response:**　　Denied. The alleged fact is not material.  There is no record evidence on

the subject.

46.     Information concerning Jeffrey Gundlach is available on Google.com, including references to the Barron's article.  (Id., at ¶ 47.)

**Response:**     Denied.  The alleged fact is not material.  There is no record evidence on the subject.

47.     The alleged CMI related to the alleged Gundlach image in the Barron's article is free standing text that is not included on the image, but is text below the image.  (Id., at ¶ 48; Ray Decl., Ex. 3, at 1 (Barron's article); see also Comp., Ex. 5)

**Response:**     Admitted.

48.     The alleged CMI related to the alleged Gundlach image sits behind a paywall on Barron's website and is not publicly accessible.  (Wolinsky Decl., at ¶ 44.; Ray Decl., Ex. 1, at 40:16-19 (Valuewalk Corp. Dep.); Ex. 4, (Screenshot of Barron's paywall on "The King of Bonds" article); see also Jack Shafer, "Not All Information Wants To Be Free," SLATE, Feb. 18, 2009, available at http://www.slate.com/articles/news_and_politics/press_box/2009/02/not_all_information_wants_to_be_free.html (indicating that Barron's had its subscription paywall as early as 2009).)

**Response:**     Denied.  The alleged fact is not material.    The *Slate* article is not evidence and, if it was, it would be irrelevant as is simply references "the *Journal*'s sister publication, *Barron's*, which has 150,000 Web subscribers."   It does not say what service is subscribed to and it does not make any reference to archived content.  While *Barron's* extended its paywall to cover general access to archived data in the spring of 2017, no paywall blocks access to a specific search for 2011 article on Gundlach.  The page was accessed without payment at http://www.barrons.com/articles/SB50001424052970204442204576144662301971254 on July

24, 2017.  *See* Declaration of Bruce Bellingham and attached page view of paywall-protected

contend accessed without payment.

49.      Accessing the alleged CMI requires a subscription to Barron's magazine.

(Wolinsky Decl., at ¶ 50.)

**Response:**   Denied.  *See* response to ¶ 48.

50.      Valuewalk has no knowledge that any of its independent contractors had a

subscription to Barron's magazine during the period 2012-2016.  (<u>Id.</u>, at ¶ 51.)

**Response:**   Denied.  MGP does not know if Valuewalk has knowledge of its

contractor's reading matter.  There is no record evidence on the subject.  There is no evidence

that Valuewalk's independent contractors had any involvement in the infringement.  The only

documentary evidence – Wolinsky's email to Sidra – strongly suggests otherwise.

51.      Wolinsky did not have a subscription to Barron's magazine during the period

2012-2016.  (<u>Id.</u>, at ¶ 52.)

**Response:**   Denied.  Wolinsky admitted that he "sometimes" read *Barron's.  See* Exh.

1, Wolinsky Dep. at 40:17.  He did not recall whether or not he read the *Barron's* article on

Gundlach in 2011.  Id. at 46: 19-22.  A jury could find it implausible that the Editor-in-Chief of

a financial publication never reads *Barron's*, especially when he testified that he sometimes did.

## ADDITIONAL UNCONTESTED FACTS

52.      Wolinsky describes himself as the owner of Valuewalk.com.  See Exh. 1,

Wolinsky Dep. 30:7-8.  Wolinsky is the sole executive officer of Valuewalk, LLC. Id. 339:22-

340:5 ("I believe that I'm the sole, whatever it's called, sole person.")   He alone can bind

Valuewalk in contracts, id. 27:21-24, and he alone makes borrowing decisions unless he has

authorized an accountant to act as his agent.  Id. 28:5-16.

53.     Wolinsky earned salary from the operation of the ValueWalk.com website.  *See* Exh. 1, Wolinsky Dep. at 18:6-22; 315:23-316:12; 318:4-7;317:10-23; 317:24-318:3;301:17-19; 302:13-18.  He received profits and distributions from the operation of VW, LLC. *See* Exh. 23, Tax returns.

54.     MGP never granted any rights in the Gundlach Image to ValueWalk. *See* Exh. 1, Wolinsky Dep. at 348:19-351:18, esp. 351:15-18 ("I did not have any communication with Michael Grecco…"); 382:1-23 (Wolinsky knew no evidence that MGP intended for the Gundlach Image to be displayed on ValueWalk.com); 351:19-364:5 (Wolinsky did not know any authorization to use the Gundlach Image obtained from anyone, and knew of no effort by ValueWalk to obtain such authorization); 351:19-364:5 ("no one sent me a pic – that picture and said, 'You could use it.  Here it is.'"); 354:19-23, 355:7-16 (Wolinsky did not know if ValueWalk or anyone acting on its behalf sought permission to use the Image).

55.     Valuewalk originally agreed, in response to discovery requests, to produce images of the Gundlach Image including "those in computer files and archived records on the server you use."  See Exh.10, Defendant's  Responses to First Document Requests (mis-titled "Plaintiff's Responses" ) at ¶ 1.

56.     Valuewalk later claimed that it had destroyed the electronic evidence when Grecco first raised the prospect of future litigation.   Due to spoliation or concealment, the only record of the 2012 infringing work is a Wayback Machine copy that plaintiff downloaded (before defendants cut access to their archived site), and an Imagerights "sighting" which captured the URLs at the same addresses as the Wayback copy.  The record of the 2015 accused work similarly consists of (1) the copies that Grecco sent to VW with his demand, and (2) the Imagerights "sighting" report.

**SPECTOR GADON & ROSEN, P.C.**

Date:  July 24, 2017

By: s/ *Bruce Bellingham*
Bruce Bellingham, Esquire
(215) 241-8916 / FAX- (215) 531-9115
bBellingham@lawsgr.com
David B. Picker, Esquire
dpicker@lawsgr.com
1635 Market Street – 7th Floor
Philadelphia, PA  19103
*Attorneys for Michael Grecco Productions, Inc.*